RETIRE F. CROCKER *v.* STEPHEN CROCKER and others.

| 31 | 507 |
| 169 | ¹328 |

Where a plaintiff, by his own voluntary act, has, through misplaced confidence, conferred the apparent right of property in bank stock upon a third party, a *bona fide* purchaser of such stock from such party will be protected against any secret trust in favor of the plaintiff.

But where a party, having notice, actual or constructive, of the plaintiff's equities, has dealings in respect to such stock, he will hold subject to the plaintiff's rights.

*H. S. McKay*, for the appellant.

*Martin Smith*, for the respondent.

WRIGHT, J. We must apply the law to the facts found by the judge at Special Term, and cannot look into the evidence (as it was the province of the court below on appeal to do) and affirm or reverse the judgment, as we shall agree or disagree with the original tribunal as to the facts. The reversal of the judgment at the General Term not being stated in it to be on the facts, is deemed to have been on the law alone, as applied to the facts found by the judge; and the questions of fact are not, therefore, open to review here. (Code, § 268.)

This disposes of the question so elaborately argued by the defendants' counsel, principally by a reference to the evidence, viz:, the fraudulent purpose of the plaintiff in the transaction in August, 1846, respecting the stock. Upon the facts, as found by the judge, no fraud can be predicated, even were the defendants in a position to allege it, and had by the pleadings raised any such issue. There is a distinct finding that the arrangement by which the stock was purchased at the public sale, by his brother, for the plaintiff's benefit, was not made to hinder, delay or defraud the creditors of the latter. But besides this, the defendants were in no position to allege that the transaction was fraudulent. They were not creditors of the plaintiff, nor did they make title or claim through any proceedings instituted by his creditors. Other parties had filed a creditors' bill against the plaintiff, and

obtained an injunction which was pending at the time the stock was purchased, but these parties do not complain (if they could have complained), and the defendants were in no way connected with them. The principal defendant was the mere agent of the plaintiff, in effecting the purchase, and any rights which the others had were derived through such agent.

What then was the case? In 1846, and before that time, the plaintiff owned 400 shares (of $25 each) of the capital stock of the Union Manufacturing Company of Norwalk, in the State of Connecticut. He had paid upon such stock $9,000, and owed the balance, $1,000. He had a claim against the company equal to such balance. Not being able to pay the balance on his stock, the company notified him that he must pay, and to compel payment advertised the stock for sale at auction at Norwalk. After notice of the sale the plaintiff settled his claim against the company by which they were to allow him $900, and it was arranged, that on the sale of the stock, $900 should be credited to him on account of the $1,000 due by him on the stock, and he should be entitled to the stock on paying the balance. The plaintiff and his brother, the defendant Stephen Crocker, both resided in the city of New York, and an arrangement was made between them, that Stephen, who knew of the arrangement with the company, should attend the sale at Norwalk, and purchase the stock for the plaintiff's benefit, the latter then being in embarrassed circumstances, and not being able to buy it himself by reason of an injunction having been granted against him. On the 27th August, 1846, the stock was sold at auction pursuant to advertisement, and bid in by Stephen Crocker in his own name, at $2.55 per share; but in consequence of the before mentioned agreement, made previous to the sale, he paid to the company no more than $104. The auctioneer at the sale gave a certificate of the transfer of the 400 shares to Stephen, and in conformity with the laws of Connecticut, the same was duly recorded in the office of the town clerk of Norwalk; thus vesting him with the legal title. The substance of the transaction then was,

that the plaintiff's stock being about to be sold at public auction for the balance of $1,000 which he owed upon it, and having agreed with the company that on the sale he should be credited with $900, being the adjusted amount of the company's indebtedness to him, and be entitled to the stock on paying $100, he arranged with his brother Stephen to attend the sale, and buy in the stock for his benefit. Stephen attended the sale and bid in the stock in his own name for the sum of $1,020, but in accordance with the agreement between the company and the plaintiff to credit the latter on the sale the sum of $900, he paid but $104 of his bid, being the balance due after such credit with some trifling expenses of the sale. Stephen Crocker then purchased the stock as the agent of the plaintiff, in his own name, with the funds of the plaintiff, and for the benefit of the latter. By the purchase, he acquired, in equity, no title to the stock as his own; but as between him and the plaintiff was the mere trustee of the latter, who was the equitable owner of it. When a purchase is made by an agent, in his own name, with the funds of the principal, a trust arises or results in favor of the latter by the implication of law. The judge at Special Term was therefore right in the conclusion that as between the plaintiff and his brother Stephen, the latter, although clothed with the legal title, was not in equity the owner of the stock, but held it from the time of its transfer to him in August, 1846, as the trustee for the benefit of the plaintiff. As between these parties, the plaintiff in equity was the owner, and Stephen Crocker the nominal purchaser, who had the *indicia* of title, held it in trust for him. So far, then, as the defendant Crocker was concerned, the trust, which was not invalid by our law, a court of equity will enforce.

Any interest or right which the other defendants acquired in the stock was derived through Stephen Crocker, by a transfer from him. If they had knowledge or notice of the trust they could not claim protection as *bona fide* purchasers. It would unquestionably be different, if, without notice, they became the purchasers, Stephen Crocker holding the stock in

his own name for years, and dealing with it as his own, without objection by the plaintiff. In April, 1851, Foster & Livingston advanced their own note to Stephen Crocker for $3,000, and took as security 100 shares of the stock, with a power of attorney to one of their clerks to transfer it. They paid this note at maturity with means furnished by Crocker, and at the same time gave him a new note for the like amount, and also three notes for $1,000 each. These transactions were merely a continuance of the first loan, and were made without any knowledge of the trust in favor of the plaintiff. The last notes were paid by that firm when they fell due. On the 20th August and 10th September, 1851, Stephen Crocker lodged other 100 shares of the stock with Francis Skinner & Co., with power to transfer it, as collateral security, for an advance to him of $3,000 by their two acceptances of $1,500 each, which they afterwards loaned and paid; which loan was never paid. This advance was made on the faith and security of the stock, and without knowledge or notice of the trust. With respect to these defendants, I entirely concur in the conclusion of the judge at Special Term that they were entitled to hold the several parcels of stock transferred to them, and be reimbursed their advances by a sale of it. The plaintiff had, by his own voluntary act, caused Stephen Crocker to be invested with the legal title to the stock, and suffered him to deal with it as his own for years. Having, through misplaced confidence, conferred on him the apparent right of property as owner, a *bona fide* purchaser of the stock from him, in the course of commercial dealing, without notice, would be protected in his title against any latent equities of the plaintiff. Foster & Livingston and Skinner & Co. lent their notes and acceptances to Stephen Crocker on the credit of the stock transferred to them without notice of the secret trust in favor of the plaintiff, and were *bona fide* purchasers; for the term "purchaser," in this connection, includes one who advances money or incurs responsibility upon credit of property.

On the 27th of October, 1851, the firm of Lounsberry, Bissell & Co. (of which firm Stephen Crocker was then a

member) lent and advanced to Crocker $6,000, by their two drafts on F. Skinner & Co. for $3,000 each, for the benefit of Crocker, who, at the same time, lodged with them as security the remaining 200 shares of the stock, and also 100 shares of St. Lawrence Mining Company stock. The latter they surrendered to him after this action was commenced. They paid the two drafts; and the loan of $6,000 is still unpaid. One of the findings of fact by the judge is, that the firm of Lounsberry, Bissell & Co. took the assignment of the 200 · shares of stock, with notice of the facts and circumstances under which Stephen Crocker purchased and held the same. Knowing that Stephen Crocker held, not in his own right, but as trustee for the plaintiff, they are not entitled to be protected. They are not *bona fide* vendees, having taken with knowledge that Stephen Crocker was violating a trust reposed in him. As against the *cestui que trust* they took nothing by the fraudulent transfer.

It is insisted that the finding is not that the firm had *actual* notice of the trust, but that the knowledge of Stephen Crocker, being a member of the firm, operated as notice to the defendant Bissell, and other members of the firm. If this were so, I should hesitate some upon the question, whether the knowledge of Stephen Crocker operated as notice to the other members of the firm, so as to deprive them of the character of *bona fide* holders of· the stock. But the finding cannot be construed in any other way than that, as matter of fact, the firm knew of the trust. It is found as distinctly by the judge as any other fact in the case, that the firm took the assignment of the 200 shares of stock with notice of the facts and circumstances under which Stephen Crocker purchased and held the same. That is, that they knew that Crocker had purchased the stock for and on account of the plaintiff, and held it in trust for him.

Upon the whole, I am of the opinion that the correct disposition was made of the case at the Special Term. The leading question was, whether the defendant Stephen Crocker owned the stock in his own right, or held it in trust for the plaintiff. If in the latter character, he was bound to account

to the plaintiff for the stock, or the value of so much of it as he had, in fraud of the plaintiff's rights, disposed of to *bona fide* purchasers. Two hundred shares of the stock he had hypothecated with Foster & Livingston and Francis Skinner & Co., as collateral security for loans made to him. These firms advanced to him on the credit thereof, in each case, $3,000, without notice of the claim or interest of the plaintiff, and had a lien on the stock to the extent of their several advances. The remaining 200 shares were hypothecated with Lounsberry, Bissell & Co. (who are represented in the action by the defendant Edward C. Bissell), as collateral security for the payment of two drafts of $3,000 each, lent by them at the time to Stephen Crocker. This firm had notice of the claim of the plaintiff, and the character in which the defendant Crocker held the stock. They were not innocent purchasers, or deceived as to the rights of their assignor, or of the plaintiff; and as against the plaintiff the assignment of Crocker gave them no title to the stock. This firm were properly decreed to transfer the 200 shares to the plaintiff.

The Supreme Court at General Term affirmed, with costs of the appeal, so much of the judgment of the Special Term, as related to the defendants, Francis Skinner & Co. and Foster & Livingston; and reversed the residue of it, affecting the defendants Stephen Crocker and Edward C. Bissell, and dismissed the complaint with costs. I am in favor of reversing the judgment of the General Term, and affirming that of the Special Term, with costs of this appeal, as against Stephen Crocker and Edward C. Bissell, but if this cannot be done, there should be a new trial ordered. In case the judgment of the Special Term is affirmed, the plaintiff should pay F. Skinner & Co.'s, and Foster & Livingston's costs of the appeal to this court, and the judgment be so modified as to permit the plaintiff to redeem the 100 shares of stock from Skinner & Co., by paying to them within thirty days from the entry of our judgment, the sum of $3,000, with the interest thereon from the 19th of July, 1852, and their costs in the courts below and in this court; and

also to permit him to redeem the 100 shares of stock from Foster & Livingston, by paying to them, within the time above specified, the sum of $3,000, with interest thereon from the 11th of April, 1852, together with their costs in the courts below, and in this court.

Judgment of the General Term reversed, and that of the Special Term affirmed, in accordance with the views suggested in the opinion by WRIGHT, J.