McNEIL *vs.* THE TENTH NATIONAL BANK in the City of New York, impleaded, &c.

Where certificates of stock are deposited with a broker, by a customer, as *margin*, or additional security against loss to him while carrying other stock for the depositor, the transaction is, in law, a *pledge;* and being such, annexing to the scrip pledged a power of attorney from the owner, authorizing the transfer of the scrip, does not change the character of the transaction, but is merely a necessary act to put the pledge in a condition to be available as such, in case of the pledgor's default.

As between the pledgor and the pledgee, in such a case, the latter has no legal right, secretly or without the knowledge of, or notice to, the pledgor, to sell the stock pledged.

The use of the certificates of stock, by the pledgee, beyond the mere purpose of a pledge, or margin, is tortious, if not felonious.

And a transfer of the certificates by the broker to a third person gives no title to the latter as purchaser, though he pays a valuable consideration therefor, and though the scrip has a blank power of attorney attached; and even though such purchaser believed he was dealing with a person who had authority to sell.

This is the rule in regard to every species of personal property, except commercial paper. *Per* POTTER, J.

Certificates of stock have not yet been recognized by the courts as another exception to the rule, and as holding equal rank, in this respect, with bills of exchange and promissory notes. *Per* POTTER, J.

If the transaction is a *pledge,* then the pledgor has a right of redemption, and before a sale can be made, by the pledgee, the pledgor is entitled to reasonable notice, and demand of payment of his liability, and there must be default of such payment, on his part.

Such a transaction as the above does not amount to an *agency* of the pledgee for the pledgor.

The case of *Crocker* v. *Crocker* (31 *N. Y. Rep.* 507) commented on, and distinguished; and stated to be unskillfully reported, and well calculated to mislead.

THIS is an appeal from a judgment entered upon the report of a referee. The referee found as matters of fact:

*First.* That in the month of September, 1866, the plaintiff was the owner of 134 shares, of $100 each, in the capital stock of the First National Bank of St. Johnsville, and at that time he was keeping an account with Charles Good-

year, George Goodyear, George G. Goodyear and Harvey Durand, parties doing business in the city of New York, as bankers and brokers, under the firm name of Goodyear Brothers & Durand; and for the sole and only purpose of securing them for any balance on such account, the plaintiff delivered to, and left with, said firm the certificate or scrip for said 134 shares of stock, with a blank assignment and power of attorney to transfer the same, indorsed thereon, signed by the plaintiff; that no revenue stamp was affixed thereto at the time the plaintiff so signed and left the same with said Goodyear Brothers & Durand, nor has he ever authorized any person to affix a revenue stamp thereto, or consented to one being placed thereon; and at the time he so signed said blank assignment and power of attorney, C. A. Goodyear did not put his name thereto as a witness to the plaintiff's signature, nor has he ever been authorized or requested so to do by the plaintiff, or by any person in the plaintiff's presence, or by his request or consent.

*Second.* That the account for which said stock was pledged as security has never been rendered or stated to the plaintiff, nor has any demand been made for the payment thereof, or notice given him of the amount thereof, although the plaintiff has frequently asked for a statement of said account, and for the amount due from him thereon, with a view of paying the same, and that he has always been ready and willing to pay the amount due on said account whenever demanded; that there is now due from the plaintiff on said account $3000, with interest from the first day of December, 1866; and that at the time said 134 shares of stock were so left with Goodyear Brothers & Durand, the same was worth $16,080, and that on the 18th day of June, 1868, said stock was worth $17,420, and is still worth that sum.

*Third.* That previous to the 18th day of June, 1868, the said Goodyear Brothers & Durand were indebted to Fred.

McNeil *v.* Tenth National Bank of New York.

Butterfield, Jacobs & Co. of New York; and to secure such indebtedness they left with the last named firm, among other securities, the said scrip for the 134 shares of stock aforesaid, without the knowledge or consent of the plaintiff.

*Fourth.* That on the 18th day of June, 1868, Goodyear Brothers & Durand failed in business, and became and were wholly insolvent and unable to pay their debts, and that at the close of business hours on that day they were indebted to the Tenth National Bank of New York in the sum of $90,000 on account of checks drawn by said firm during the day on said bank, and certified as good by said bank, they having failed to make good their account; that afterwards, and on the same day, the said Goodyear Brothers & Durand made their check on said Tenth National Bank for $45,135, payable to the order of Fred. Butterfield, Jacobs & Co., being the amount for which they held the 134 shares of stock, with other securities, so pledged by said Goodyear Brothers & Durand to them, and which said check the said Tenth National Bank certified to be good, well knowing the insolvency of the makers thereof; and on the same or the next day delivered said check to said Fred. Butterfield, Jacobs & Co., and received from them said securities, which check the said bank paid on presentation, Goodyear Brothers & Durand having paid no part thereof.

*Fifth.* That the plaintiff had no knowledge or information that the said stock-scrip had ever passed out of the hands of Goodyear Brothers & Durand, until after the same came in the possession of the said Tenth National Bank as aforesaid, and that the plaintiff has never consented to any transfer of the same, or authorized any person to fill up the blanks in the transfer and power of attorney aforesaid, on the back of said scrip so signed by him as aforesaid.

*Sixth.* That at the time the plaintiff so left the said stock-

scrip with Goodyear Brothers & Durand, he was indebted to the said First National Bank of St. Johnsville in the sum of about $7000, and ever since has been indebted to that bank in that sum.

*Seventh.* That the said Tenth National Bank, at the time they so received said stock-scrip, had no knowledge of the transaction between the plaintiff and Goodyear Brothers & Durand respecting said stock, or of the plaintiff's interest therein; and that said bank realized from the sale of the other securities $29,915.19, and that when the scrip for the 134 shares of stock came in the possession of the said bank as aforesaid, there was affixed to the blank assignment and power of attorney a 25 cent revenue stamp, canceled by the cancelling instrument of Goodyear Brothers & Durand, and the name, C. A. Goodyear, as witness to the plaintiff's signature; and a few days thereafter the cashier of said bank filled in the blank in the assignment and power of attorney aforesaid, the words "J. H. Stout, cashier Tenth National Bank, New York, one hundred and thirty-four (134)," and dated the same 19th of June, 1868, and sent the scrip to the First National Bank of St. Johnsville for the purpose of having said stocks transferred to him as cashier of the said Tenth National Bank of New York, and that such tranfer has not been made, by reason of the injunction in this action, and that said scrip still remains in the possession of the First National Bank of St. Johnsville.

*Eighth.* That after the said scrip for the 134 shares of stock came in the possession of the said Tenth National Bank as aforesaid, the plaintiff informed said bank that the scrip belonged to him, and had been left by him with Goodyear Brothers & Durand for the sole and only purpose of securing them for any balance of account that might be due them from the plaintiff, and that he was entitled to have said scrip delivered up to him on his paying such balance, which he was willing and ready to pay;

and the plaintiff requested said Tenth National Bank to deliver up to him said scrip on his making such payment, which the said bank declined to do, unless the plaintiff would pay about the value of said stock.

As matters of law the referee found, that the plaintiff was entitled to have said certificate or scrip for said 134 shares of the capital stock of the said First National Bank of St. Johnsville delivered up to him, upon his paying the balance due on his account with Goodyear Brothers & Durand. He therefore decided that the plaintiff pay to the Tenth National Bank of New York the sum of $3518, the balance of his account with Goodyear Brothers & Durand, with interest from the date of his report, within sixty days from the entry and notice of said judgment in this action; and that the Tenth National Bank of New York, upon said payment, deliver up to the plaintiff the said certificate of scrip for the 134 shares in the capital stock of the First National Bank of St. Johnsville, and pay the plaintiff his costs of the action; and he ordered and directed that judgment should be entered accordingly.

From that judgment the defendants appealed to this court.

*Hardin & Burrows*, for the plaintiff.

*E. L. Fancher*, for the defendants.

*By the Court*, POTTER, J. If this case is to be decided upon the same principle of law as if it was depending between the plaintiff and the firm of Goodyear Brothers & Durand, its determination is simple and easy. Between those parties, the stock in question was given by the former and held by the latter as a pledge, for a contingent liability as to amount, and a pledge, in its nature, to whatever might be the amount of liability, differing in

no respect, as to the effect of the contract, from a pledge for a sum certain.

Goodyear & Co. had no authority, in fact or in law, to sell the stock until they had first demanded payment of the plaintiff of the sum due on account of the liability from him to them. (*Wilson* v. *Little,* 2 *N. Y. Rep.* 443.) As I understand the contract between the plaintiff and Goodyear & Co., and as it appears from the evidence and the report of the referee, it is obvious that no absolute sale of the bank stock was ever intended between them. Goodyear & Co., as brokers, were carrying for the plaintiff 200 shares of North Western railroad stock upon a declining market. This railroad stock, itself, failed to be sufficient security to his brokers, and the plaintiff was called upon by them for more *margin.* This, we understand, means, in the broker's lexicon, additional collateral security against loss to the broker, while he is so carrying stock for his employer. The bank stock in question was furnished as such margin. What then were the legal relations between the plaintiff and his brokers in relation to this bank stock? There was no sale of it to the brokers. That is not so claimed. It is only claimed that there was a power of sale. This was necessary in order to make this margin of any security. It is not even argued that, as between those parties, this power of sale was intended to be absolute, and without the usual rights and incidents belonging to a pledge—that of notice to the plaintiff, and his right of redemption. If it was a pledge, there was at law this right of redemption, and before a sale could be made by the pledgee, the pledgor was entitled to reasonable notice, and demand of payment of his liability, and default of such payment on his part. While the pledge remained as such, unaffected by any demand, notice and default, the legal title of the stock (as a general rule) remained in the pledgor; but when the certificate of legal title to the stock is actually intended to be transferred, and the transaction

not intended to be an absolute sale, then, generally, the courts hold it to be a mortgage. In the case before us, there is no express or other agreement shown that would constitute this transaction a mortgage, nor, in fact, any other agreement than such as the law implies, from its being left as *margin*, that is, that the certificate of bank stock was left as collateral security to the brokers Goodyear & Co., in the character of margin, for carrying the 200 shares of North Western railroad stock. Such a transaction, in law, is clearly a pledge. And if a pledge, then the giving of the plaintiff's name to the power of attorney, did not change the pledge, but was a necessary act to put the pledge in a condition to be available, as such, in case of the default of the pledgor. This power of attorney, it is clear, was not in itself the agreement between the parties to it, as to the holding of the stock. That agreement had been made before; but this certificate was the security for the performance of such former agreement on the part of the plaintiff, and this constitutes the bank stock a pledge. (*Dykers* v. *Van Allen*, 7 *Hill*, 497.)

As between the plaintiff and Goodyear & Co., it is clear, then, that the latter had no legal right secretly, or without the knowledge of, or notice to, the plaintiff, to sell his stock to Butterfield & Co., or to the defendants, the Tenth National Bank of New York, because it was a pledge. (*Dykers* v. *Van Allen*, *supra*, 501.) It must be remembered that it was not the stock itself, but the evidence of title to the stock. It was the pledge of a chose in action. This presents the plaintiff's point.

But the defendants, the Tenth National Bank of the city of New York, claim that the transaction in question between the plaintiff and Goodyear & Co., was a case of agency of the latter for the former; that the plaintiff having voluntarily parted with the evidence of title to, or external *indicia* of ownership of, the shares of stock in question, ought not to be allowed to turn over to an inno-

cent party the loss resulting from the misconduct of his broker; that those who have acted in good faith, and have been misled by the instrumentalities and agencies which the plaintiff has himself put in motion, should not now bear the loss, because the plaintiff's agents have deviated from their secret instructions. There is abundant authority to sustain these propositions, in cases of agency. If the defendants have made this rule as to agencies applicable to the case before us, the judgment should be reversed, or modified. The power to transfer the stock in question, upon its face, was expressed to be for value received, the power was declared irrevocable, and the referee found as a fact that the said Tenth National Bank, at the time they received the said stock-scrip, had no knowledge of the transaction between the plaintiff and the said Goodyear Brothers & Durand, or of the plaintiff's interest therein. The case of *Crocker* v. *Crocker* (31 *N. Y. Rep.* 507) is the latest authority cited by the defendants to sustain them in their theory of the case, and that case is also cited by the plaintiff as authority, and claiming a distinction between it and the present, and insisting that such distinction was controlling in their favor. The case of *Crocker* v. *Crocker* is unskillfully reported, and is well calculated to mislead the profession. The statement of the case, and the leading opinion that was adopted by the whole court, is omitted in the report, and an opinion coming to the same conclusion, but which was not read on the consultation, is reported. Though there is nothing in the reported opinion that is in conflict with what was decided, the report entirely fails to present the whole view, and real point of any value in the case; and hence the confusion. The action was brought by R. F. Crocker, the former owner of the stock in question, against S. Crocker, in whose name the stock was held, and others to whom it had been pledged by S. Crocker, the plaintiff alleging that the stock was held by S. Crocker in secret trust for the plaintiff. S. Crocker had

McNeil *v.* Tenth National Bank of New York.

been permitted by the plaintiff, for years, to hold the stock as his own, and in his own name, and from time to time to pledge and hypothecate the stock as security for loans, with the knowledge and consent of the said S. F. Crocker, the plaintiff. But the secret trust between the Crockers was established. The point decided was, that S. Crocker was made to account for this secret trust to the plaintiff— and all the pledgees and mortgagees who took such stock as security, with knowledge of the secret trust, were held not to be *bona fide* holders thereof, and were also held to account to the plaintiff; but all such pledgees and mortgagees as held without notice of the secret trust were protected, for the reason that the plaintiff, by implication of law, having authorized the transfer, repeated use and pledging of the stock to raise money by S. Crocker, with apparent ownership upon the books in his name, could not, as against such *bona fide* holders, hold them liable to account. Such a case was clearly brought within the rule of agency. The agent was clothed with apparent ownership, and with all the *indicia* of ownership, and with actual transfer, with authority to transfer, and a ratification of his transfer. As to third persons, in law, such apparent authority was equivalent to real authority. This is settled law as to agencies.

It is not difficult to distinguish that case from the present. Here there was never any title in the brokers; here no agency to make absolute sale, without first giving notice and making demand, was ever created; no consent to its use to borrow money upon was ever given. The use of the certificate of stock in this case by Goodyear & Co. beyond the mere purpose of pledge, or margin, was tortious, if not felonious. In *Crocker* v. *Crocker* its use was known and authorized; in this case it was unknown and unauthorized by the plaintiff, and we think the transfer conferred no title to a third person as purchaser, though he paid a valuable consideration therefor, and though the scrip had a blank power of attorney attached, and even

though the defendant as purchaser believed he was deal-ing with persons who had authority to sell. This was so held in *Anderson* v. *Nicholas*, (5 *Bosw.* 121.) We think this is the rule in regard to every character of personal property except commercial paper. (*Id.*)

This kind of chose in action, though greatly used by way of security, and exceedingly convenient for such use in commercial transactions, have not yet been recognized by the courts as another exception to the rule, and as holding equal rank in this regard with bills of exchange and promissory notes. In the case of *Bush* v. *Lathrop*, (reported in 22 *N. Y. Rep.* 535,) is found a most thorough, critical and able review of the conflicts in the cases reported, and of the final settlement of a rule in this respect, to the effect that we have stated. In that case Judge Denio gave the history and progress of the conflicts in the opinions of distinguished jurists, and the adjudications in regard to this question in the courts of England, and in our own country, with that depth of research, learning and fidelity which ever distinguishes the opinions of that able judge; and although three other learned and able members of that court dissented from his conclusions, they were adopted by the court as the law of this State. It would not be becoming in us here to criticise that review of the case, and as little becoming to question, or refuse to follow that authority. It settles the law in that regard. We have only then to see if this case is brought within it.

I have been furnished also with a manuscript opinion in another case recently decided in the Court of Appeals, *Ballard* v. *Burgett,* in which the general rule is repeated, " that a purchaser of personal property, other than com-mercial paper, acquires no better title than that of his vendor." In that case is a review of a large number of cases cited, which had been supposed to be exceptions, and apparently holding to a different rule, and among them the case of *Wait* v. *Green,* (36 *N. Y. Rep.* 556;) but

McNeil *v.* Tenth National Bank of New York.

the opinion says that the point here in question was not involved in *Wait* v. *Green*. Taking this view of the question, and the opinion of the Court of Appeals in a review of that case, we must adopt their understanding of its doctrine; it would otherwise be in conflict with *Bush* v. *Lathrop*. The court say, that in no one of the cases cited in *Wait* v. *Green* has it been held, "that one to whom property has been delivered *without any intention to transfer the title*, can confer a good title to a purchaser from him;" and to this proposition they cite *Herring* v. *Hoppock*, (15 *N. Y. Rep.* 409,) which fully sustains the proposition. Having thus the opinion of the Court of Appeals as to what effect is to be given to *Wait* v. *Green*, and a full indorsement of *Herring* v. *Hoppock*, we must conform our views to them.

If we are right in the view we have taken of the law upon the points we have discussed, we need not examine the points raised, that the subscription of the witness to the power of attorney was a forgery, or, that the revenue stamp was added without authority. The finding of the referee that the Tenth National Bank, at the time they received the said stock-scrip, had no knowledge of the transaction between Goodyear Brothers & Durand, or of the plaintiff's interest in the said scrip, is not, in the view we have taken of the law, controlling in favor of said defendants. They might be *bona fide* purchasers of a chose in action, and yet their vendor, having no title in himself, could convey none to them.

The result of these views is, that the judgment must be affirmed.

[SARATOGA GENERAL TERM, November 1, 1869. *Rosekrans*, *Potter* and *Bockes*, Justices.]