L. Heinbockle, appellant, *v.* O. Zugbaum, respondent.

Personal Property — *Conditional sale — Performance of condition — Title, when passes — Bona fide purchaser.*— A sale of chattels, on condition that the title to the property should not pass until payment of the purchase price, although accompanied by a change of possession, confers no title on the vendee or his *bona fide* purchaser, until performance of the condition, notwithstanding the vendor took the notes of the vendee for the purchase price, provided such notes had not been negotiated.

*Evidence.*— Proof of contents of an instrument is admissible when loss of instrument is shown.

*Appeal from Second District, Beaverhead County.*

Randolph & De Witt, for appellant.

E. W. & J. K. Toole, for respondent.

WADE, C. J.   This is an action of claim and delivery, in which the plaintiff seeks to recover the possession of certain personal property, consisting of one billiard table, one pool table, and one set of bar fixtures, of the alleged value of $945.

The complaint alleges title and right of possession in the plaintiff, and an unlawful taking and conversion to his own use by the defendant.   The answer denies the title to, and right of, possession of the plaintiff, and alleges a purchase of the property by the defendant from one Julius Lubbes, who, at the time of purchase and for four or five months next prior thereto, had been the owner, in the possession and entitled to the possession thereof.

The plaintiff testified that, in February or March, 1882, he made a conditional sale of the property described in the complaint to Julius Lubbes, the person mentioned in the answer; that $400 was paid on the sale, and that Lubbes was to pay $100 each month for eight months, and at the end of that time the sum of $900, the balance of the purchase money, the purchase price being $2,100, for which he took Lubbes' notes, and now has them; that one of the $100 payments became due July 15, 1882, but was not paid on that day or at all.   Whereupon the plaintiff commenced this action, and seized upon the property.   The plaintiff further testified that, when this sale was made, Lubbes and himself entered into a written contract; that this contract was drawn by one J. C. Rogers and given to Lubbes, who left the territory July 30, 1882, and that the plaintiff had not seen him since he left, and did not know where he had gone.

J. C. Rogers testified that he drew the contract referred to by plaintiff, and, subject to the defendant's objection, testified that he could state from memory, substantially, the contents of the instrument, which he did, as follows: That the instrument provided that the personal property mentioned in the complaint should pass into the hands

of said Julius Lubbes; that Lubbes should remain in possession of the same upon the condition that he paid the amounts as mentioned by the plaintiff in his testimony, and that, if he made default in any of such payments, he should forfeit said possession, and the same should revert to the plaintiff, and that the title in and to said property should not pass to said Lubbes, but should remain in the plaintiff until all of said payments were made.

There was further proof as to the loss of the instrument, but all of the testimony of the plaintiff, and of the witness Rogers, relating to the contents of said instrument was, on motion of the defendant, stricken out, and this action of the court is assigned as error.

The loss of the instrument seems to have been sufficiently established to have authorized proof of its contents, provided such proof would have been competent, as tending to establish the plaintiff's title and right of possession to the property in question. The plaintiff had sold and delivered the possession of the property to Lubbes, taking his notes for the purchase money. It does not appear whether these notes were negotiable promissory notes, but whatever they were, the plaintiff had them in court when he gave his testimony. Lubbes, after so receiving possession of the property for a valuable consideration, sells the same to the defendant; and thereafter the plaintiff, still retaining the unpaid notes in his possession, some of them not being yet due and payable, upon default in the payment of one of the notes when it became due, replevins the property, claiming, though he had delivered possession of the property to Lubbes, and had received his notes therefor, that there was a contract or agreement between him and Lubbes, which provided that, if there was default in making any of said payments when the same became due, the vendee should forfeit his possession, and that the title to the property should not pass from the vendor to the vendee

until all the purchase money had been fully paid. It is not claimed that the defendant had any knowledge or notice of this agreement, or that he did not pay the full value for said property, or that he was not an innocent *bona fide* purchaser thereof. At one time the doctrine prevailed to some extent, and it is, perhaps, now held in some jurisdictions, that a *bona fide* purchaser, under such circumstances, ought to be protected, upon the general principle that wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. And to apply this doctrine to the case in hand, the loss would fall upon the plaintiff, for he, by giving credit to Lubbes, and delivering possession of the property, enabled Lubbes to commit the fraud upon the defendant. But the weight of American authority is now opposed to this doctrine.

The case of *Coggill et al.* v. *The Hartford & New Haven R. R. Co.* 3 Gray, 549, is a leading one on this subject; and Bigelow, J., in deciding it, says: "It is urged, and we suppose this to be the main argument on which the contrary doctrine is founded, that as possession of personal property is *prima facie* evidence of title, it would furnish fraudulent parties with the means of defrauding honest purchasers, to trust them with the apparent ownership of property, while the real title is allowed to remain in a third party, who can reclaim it at pleasure. If a vendor, by collusion with his vendee, entered into the contract and annexed the conditions for the purpose of enabling the latter to obtain a false credit, or to impose on innocent persons, by means of the property placed in his possession, the argument would be decisive. In such a case the vendor, being a party to a fraud, would be estopped to set up any title to the property; and creditors, as well as innocent purchasers of the vendee, might well claim to hold it, on the ground that it was placed in his possession for a fraudulent purpose. But when

the contract of sale is entered into in good faith, for the purpose of enabling the vendor to realize his purchase money or obtain security for it, in conformity with the original terms of the bargain, the argument *ab inconvenienti* is without any foundation in principle or authority. The general rule of the common law has always been that a man who has no authority to sell cannot, by making a sale, transfer the property to another. Chitty, Con. 8th Am. ed. 342.

"Except in cases of sales in market overt, which do not exist in this commonwealth, possession, of itself, confers no authority to sell. A lessee of chattels or a bailee for a special purpose can pass no title to a vendee without authority from the lessor or bailor; and yet the property is intrusted to possession, as apparent owners, in the same manner as a vendee, under a conditional sale. Besides, there is no good reason or equity in placing the burden of a fraudulent sale by a vendee, in violation of the condition on which he received the property, upon a *bona fide* vendor, rather than upon a *bona fide* purchaser. On the contrary, if either is to lose by his fraudulent act, it should be the latter, who has dealt with a party having no authority, instead of the former, who relies upon a valid subsisting contract as the foundation of his claim. It is the duty of the purchaser to inquire and see that his vendor has a good title to the property which he undertakes to sell." Long on Sales, 2d Am. ed. 189, and cases cited; *Copland* v. *Bosquet*, 4 Wash. C. C. 588; *D'Wolf* v. *Babbett*, 4 Mason, 294; *Lucy* v. *Bundy*, 9 N. H. 298; *Porter* v. *Pettengill*, 12 N. H. 299; *Herring* v. *Willard*, 2 Sandf. 418; *Barrett* v. *Pritchard*, 2 Pick. 512; *Dresser Manuf. Co.* v. *Waterston*, 3 Met. 9.

In Benjamin on Sales, sec. 620, p. 274, the rule is stated to be that where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled,

even though the goods may have been actually delivered into the possession of the buyer. Mr. Parsons (1 Par. on Cont. 537) says: "But where the right to receive payment before delivery is waived by the seller and immediate possession given to the purchaser, and yet by express agreement the title is to remain in the seller until the payment of the price upon a day fixed, such payment is strictly a condition precedent, and until performance the right of property is not vested in the purchaser."

In Schouler's work on Personal Property, vol. 2, 299, 300, the same principle is stated as follows: "We may state as decidedly the better opinion in this country that a sale of personal property made by one to whom the chattel was delivered by the original seller on condition that the property should not pass until the chattel was paid for or the price duly adjusted, confers no better title upon a *bona fide* purchaser without notice from the original buyer than the buyer himself had or his attaching creditors, or a purchaser without actual notice of the condition; that against all of these the original seller may with due diligence follow up his right and reclaim the chattel as his own for non-fulfillment of the condition annexed to the delivery. For, the original buyer, having no title in himself, could pass none; and, as it has been further suggested, any third party who knows that he had come into possession of the goods is bound to inquire whether the title was that of buyer, borrower, or hirer, or in still another capacity." In *Deshon* v. *Bigelow*, 8 Gray, 159, 160, it is held that good faith does not aid the purchasers from the vendees in such cases, because the vendors, having no title to the property, could convey none. Such purchasers hold the same legal condition as do *bona fide* purchasers of stolen goods. In *Ketchum* v. *Brennan*, 53 Miss. 596, Campbell, J., says: "A buyer must beware of purchasing from one who has no title."

In *Armstrong* v. *Huston,* 38 Vt. 448, Kellogg, J., said: "It was the unquestionable right of the plaintiff to sell this property to Thompson upon the condition, that until payment of the price, the property should remain the plaintiff's. The retention of the title to the property is not a fraud upon any person, and such a contract is one which every person has a right to make. In a conditional sale the possession of the property is ordinarily transferred to the vendee, and very frequently with expectation of both of the parties to the sale that the property will be used by the vendee; but in such cases the vendee is, until the performance of the condition, only a bailee of the property for a specific purpose, and he acquires no property in the goods from the possession merely."

See, also, 2 Kent, 497; *Morris* v. *Rexford,* 18 N. Y. 552; *Ballard* v. *Burgett,* 40 N. Y. 314; *Austin* v. *Dye,* 46 N. Y. 500; *Cole* v. *Mann,* 62 N. Y. 1; *Holt* v. *Holt,* 58 N. H. 276; *Lewis* v. *McCabe,* 49 Conn. 141; *Fairbanks* v. *Eureka Co.* 67 Ala. 109; *Sumner* v. *Woods,* 67 Ala. 139; *Marquette Manuf'g Co.* v. *Jeffreys,* 49 Mich. 283; *Warner* v. *Roth,* 2 Wy. 63; *Zutchman* v. *Roberts,* 109 Mass. 53; *Damfelser* v. *Weigel,* 27 Mo. 45; *Benner* v. *Paffer,* 114 Mass. 376; *Ridgway* v. *Kennedy,* 52 Mo. 24; *Blanchard* v. *Child,* 7 Gray, 155–158; *Fifield* v. *Elmer,* 25 Mich. 48; *Heath* v. *Randall,* 4 Cush. 195; *Buson* v. *Dougherty,* 11 Humph. 50; *Hotchkiss* v. *Hunt,* 49 Me. 219; *Bunker* v. *McKenney,* 63 Me. 529; *Wood M. & R. Co.* v. *Brookes,* 2 Sawyer, 576; *Little* v. *Page,* 44 Mo. 412; *Armington* v. *Houston,* 38 Vt. 448; *Whitney* v. *Eaton,* 15 Gray, 225; *Sage* v. *Sleuth,* 23 Ohio St. 1; *Booraem* v. *Crane,* 103 Mass. 522; *Hirschorn* v. *Canney,* 98 Mass. 149; *Sumner* v. *McFarlan,* 15 Kans. 600; *Hallowell* v. *Milne,* 16 Kans. 65; *Euloro* v. *Klein,* 79 Pa. St. 488; *Clark* v. *Wells,* 45 Vt. 18; *Duncan* v. *Stone,* 45 Vt. 118; *McNiel* v. *Tenth Nat. Bk. of N. Y.* 55 Barb. 59; *Baker* v. *Hall,* 15 Iowa,

277; *Hart* v. *Carpenter*, 24 Conn. 227; *Hunter* v. *Warner*, 1 Wis. 141; *Gibbs* v. *Jones*, 46 Ill. 319; *Dunbar* v. *Rawles*, 28 Ind. 225; *Forbes* v. *Marsh*, 15 Conn. 384.

This conditional sale was not made absolute by reason of the plaintiff having taken the notes of Lubbes for the price of the property delivered to him. If Lubbes gave his notes to plaintiff for the goods, and the goods were thereupon delivered to him, the presumption of the law is that the plaintiff took the notes, not in absolute discharge of the price, but as a postponement of payment only, and the right of the plaintiff to sue for the price of the goods revives on the non-payment of the paper at maturity. Schouler on Per. P. 432, 433, and authorities cited.

Of course, if the notes were negotiable, and had been transferred for value by the plaintiff, he could not recover the goods or the price for which he sold them, but if he has the notes in his possession and they can be delivered up or canceled upon his recovery of the goods, or a judgment for their value, the mere fact that notes were given for the purchase money would not defeat the right of the plaintiff to recover the goods, providing the sale was upon condition that the vendee should acquire no title to the property until he had paid for it, and this was so understood and intended by the parties. The seller is bound to account for the notes he may have taken, so as to save the buyer harmless, before he can recover the goods or the price for which he sold them. But if he does this, and the sale was upon the condition that the purchaser should acquire no title until the purchase price was fully paid, whereby the purchaser would hold the goods simply as bailee until that time, the fact that notes were given for the purchase money would not defeat the seller's right to recover the goods or their price, if the purchase money was not paid according to agreement.

The authorities in support of the rule that, in the absence of stipulation to the contrary, the negotiable secu-

rity is only considered to be a conditional payment, defeasible on the dishonor of the security, need not be reviewed, as there is no conflict on the point.   Benj. on Sales, sec. 730.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

COBURN, J., CONCURRING.   With much hesitation and reluctance, I unite with my colleagues in this decision. This, and the like, are cases of great hardship.   When the vendor parts with the possession of his property and delivers it to the vendee openly and in good faith, he puts it in the power of the vendee to impose upon and defraud others if the vendor still retains a secret hold upon it for the unpaid purchase money.   In many instances no vigilance or precaution on the part of a purchaser from the vendee could prevent a wrong being done.   Fair dealing would seem to require that the property should pass with the possession, or public notice be given by record, or otherwise, that there still remains in the vendor the right of possession and property.   But I yield to the overwhelming weight of authority upon the subject, with the hope] that by legislation, or a new departure in decision and opinion, a different rule may be adopted.