RAWLS v. DESHLER.

September, 1867.

Affirming 28 *How. Pr.* 66.

It is a general principle that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.

An owner of merchandise who by entrusting it to a purchaser on a conditional sale enables the purchaser to ship it and obtain a negotiable bill of lading, loses his title to the merchandise as against a *bona fide* purchaser or pledgee for value of the bill of lading.

The fact that the order by which the seller gives possession to the purchaser under the executory sale contains a clause stating that the merchandise is subject to the seller's order until paid for, does not prevent the title from passing.

Nor does it alter the case that the instrument assigned or pledged as a symbol of the property is not strictly a bill of lading.

The retaking of the merchandise by the seller in *transitu*, from the possession of the carrier, in an action of replevin of which the transferee of the bill of lading had no notice, and the recovery of judgment in favor of the seller, in such action, do not bar the right of the transferee of the bill of lading to maintain an action against the seller for conversion.

Henry Rawls and George S. Seymour sued John G. Deshler, in the Buffalo superior court, to recover the value of a quantity of corn.

On September 18, 1860, one A. L. Griffin, of Buffalo, purchased, or agreed to purchase of the defendant a quantity of white corn. The defendant had the corn on storage at the

Hatch elevator. He gave Griffin an order on the elevator in these words, dated September 18:

"Deliver A. L. Griffin, Esq., or order 4,328 47-100 bushels white corn, cargo Potomac, subject to my order until paid for.
"JOHN G. DESHLER."

The corn was delivered to Griffin on production of this order, and he, Griffin, shipped the corn on September 18 on board a canal-boat at Buffalo, and received the following bill of lading:

"September 19, 1860.

"Shipped in good order by A. L. Griffin, on board of canal-boat L. B. Trowbridge, B. T. Co. Line. ———, *Master,* the following articles to be carried under deck and delivered in like good order as addressed, without delay, towing day and night, damage and deficiency to be deducted from charges by consignors.

"Account A. L. Griffin, or order, 4328 47-100 bushels of white corn.

"Care of Rawls & Seymour, New York.

"Freight to New York 14½ cents per bushel, free of lighterage. Consignees paying towing. [*Signature.*]

"Entered September 21, 1860, S.

Indorsed, "A. L. GRIFFIN."

It appeared that Van Buren had an office in Buffalo and carried on business there under the name of The Buffalo Transportation Company. That Van Buren was a public carrier and had a regular line and had an interest in some of the boats, he was what they call a scalper, he gets a cargo from the owner, and gets a boat to take it and receives a commission from the boats. That Noble was the agent of the company and had authority to sign the bill of lading. On September 19, 1860, Griffin advised the plaintiffs of the shipment of corn to them, and that he had drawn on them for the corn. This letter the plaintiffs received in New York, on the morning of September 20. On September 19, 1860, Griffin drew a draft upon the plaintiffs for two thousand one hundred and twenty dollars, and annexed thereto the bill of lading signed by Van Buren, and on that day procured the said draft to be dis-

counted by the White Bank in Buffalo, and received the avails thereof. This draft was presented to the plaintiffs for acceptance in the city of New York with the bill of lading attached, on September 20, by the correspondent of the White Bank, and on the 21st was accepted by the plaintiffs and subsequently paid by them.

The defendant intercepted the boat on which the corn was laden at or near Rochester, while on its transit to the plaintiffs, and through the instrumentality of proceedings in replevin, obtained possession of the corn, and sold and converted the same to his own use. The action of replevin was instituted in the name of this defendant against Griffin and C. H. Wendt, the captain of the boat upon which the corn was laden. Griffin was not served with any process in the case, and Wendt, upon whom the summons was served, made default, and judgment passed against him accordingly.

The plaintiffs now bring this action, claiming to be the *bona fide* owners of said corn, to recover the value thereof. On the trial in the Buffalo superior court, the jury were directed by the judge to render a verdict for the plaintiffs.

*The superior court* held that Griffin had the right of property as well as the possession, for by the contract between defendant and Griffin and the delivery on defendant's order the property passed to Griffin, and that the words "subject to my order" merely reserved a lien, and were not equivalent to saying that the title was not to pass. That a sufficient delivery to the plaintiff was made, for the instrument which Van Buren gave to Griffin, although not strictly a bill of lading, was such a symbol as that its delivery was equivalent to an actual delivery of the corn. They also held that the recovery in the action between defendant as plaintiff and Wendt as defendant was not a bar to this action. Reported in 28 *How. Pr.* 66.

Defendant appealed to this court.

*John Ganson,* for defendant, appellant; — Cited Blossom *v.* Griffin, 13 *N. Y.* (3 *Kern.*) 569; Herring *v.* Hoppock, 15 *N. Y.* 409; Morris *v.* Rexford, 18 *Id.* 552; Strong *v.* Taylor, 2 *Hill,* 326; Smith *v.* Lynes, 5 *N. Y.* (1 *Seld.*) 41; Covill *v.* Hill, 4

*Den.* 323; 6 *N. Y.* (2 *Seld.*) 374; The Freeman *v.* Buckingham, 18 *How. U. S.* 182.

*H. C. Day,* for plaintiff, respondent;—Cited Terry *v.* Wheeler, 25 *N. Y.* 520, 524; Greaves *v.* Hepke, 2 *Barn. & A.* 130; 4 *E. C. L.* 433; Blossom *v.* Griffin, 13 *N. Y.* (3 *Kern.*) 569; 1 *Greenl. Ev.* § 277; Waldron *v.* Willard, 17 *N. Y.* 466; Calais St. Bt. Co. *v.* Scudder, 2 *Black U. S.* 372; Smith *v.* Lynes, 5 *N. Y.* (1 *Seld.*) 41–48, citing Haggerty *v.* Palmer, 6 *Johns. Ch.* 437; Keeler *v.* Field, 1 *Paige,* 312; Hollingsworth *v.* Napier, 3 *Cai.* 182 ;* Durbrow *v.* McDonald, 5 *Bosw.* 130 ;† Fleeman *v.* McKean, 25 *Barb.* 474–484; Wait *v.* Green, 35 *Id.* 585 ;‡ affirmed in 36 *N. Y.* 556; Western Trans. Co. *v.* Marshall, 37 *Id.* 509 ; § Saltus *v.* Everett, 20 *Wend.* 267, where Pickering *v.* Busk, 15 *East,* 44, is cited ; Steelyards *v.* Singer, 2 *Hilt.* 96, ‖ and cases cited ; Keyser *v.* Harbeck, 3 *Duer,* 373, 391; Stevens *v.* Hyde, 32 *Barb.* 171; Fassett *v.* Smith, 23 *N. Y.* 252; Dows *v.* Greene, 16 *Barb.* 72; 32 *Id.* 490 ; affirmed in 24 *N. Y.* 638; Dows *v.* Rush, 28 *Barb.* 157, 183, and cases cited ; Grove *v.* Brien, 8 *How. U. S.* 429 ; Wolfe *v.* Myers, 3 *Sandf.* 7 ; Evans *v.* Nichol, 3 *Mann. & G.* 614 ; 42 *E. C. L.* 321; 1 *Pars. Maritime L.* 134; Dickerson *v.* Seelye, 12 *Barb.* 99; Fenn *v.* Simpson, 4 *E. D. Smith,* 276; *Smith Merc. L.* 273; Place *v.* Union Ex. Co., 2 *Hilt.* 19–26; Powers *v.* Davenport, 7 *Black.* 497; *Angel on Carr.* § 70; 1 *Smith Lead. Cas.* 230, notes to Coggs *v.* Barnard; Hersfield *v.* Adams, 19 *Barb.* 577; Sherman *v.* Wells, 28 *Id.* 403; Russell *v.* Livingston, 19 *Id.* 346–352; ¶ Sweet *v.* Barney, 23 *N. Y.* 335; Moore *v.* Evans, 14 *Barb.* 524; Foy *v.* Troy & Boston R. R. Co., 24 *Id.* 382; Schroeder *v.* Hudson River R. R. Co., 5

---

* As to delivery, compare 1 *N. Y.* (1 *Comst.*) 261–270.

† See a further decision in 39 *N. Y.* 233.

‡ See another opinion, in 62 *Barb.* 341.

§ Affirmed in this court, and reported in this series.

‖ See also 35 *Barb.* 585. Said to be unsound and unsupported by authority, in Ballard *v.* Burgett, 47 *Id.* 646, and the latter case affirmed in 40 *N. Y.* 314.

¶ Reversed, on the ground that the agent in such case does not cease to be the agent of the carrier, in 16 *N. Y.* 515.

*Duer*, 55; Hart *v.* Rensselaer & Saratoga R. R. Co., 8 *N. Y.* (4 *Seld.*) 37; Fitzhugh *v.* Wiman, 9 *N. Y.* (5 *Seld.*) 559; Bank of Rochester *v.* Jones, 4 *N. Y.* (4 *Comst.*) 497; Oneida Bank *v.* Ontario Bank, 21 *N. Y.* 490–499; *Williams on Personal Prop.* p. 83, 2 Am. ed.; Zachrisson *v.* Ahman, 2 *Sandf.* 68;* Allen *v.* Williams, 12 *Pick.* 297; Rowley *v.* Bigelow, 12 *Id.* 307; Wardwell *v.* Patrick, 1 *Bosw.* 406; Bryan *v.* Nix, 4 *M. & W.* 789; De Wolf *v.* Gardner, 12 *Cush.* (*Mass.*) 19; Grosvenor *v.* Phillips, 2 *Hill*, 147; Gibson *v.* Stevens, 8 *How. U. S.* 384; Hatch *v.* Lincoln, 12 *Cush.* 31, 34, and cases cited; Allen *v.* Williams, 12 *Pick.* 297; Dows *v.* Dennistoun, 28 *Barb.* 393; De Wolf *v.* Harris, 4 *Mason*, 515; Stevens *v.* Boston & W. R. R. Co., 8 *Gray*, 262; *Sess. L.* 1830, c. 179, p. 204, §§ 1, 2; 3 *R. S.* 76, 5 ed.; Spencer *v.* McGowen, 13 *Wend.* 256; Shipman *v.* Clark, 4 *Den.* 446; Castle *v.* Noyes, 14 *N. Y.* (4 *Kern.*) 329.

By THE COURT.—DAVIES, Ch. J. [After stating the facts.]— It may be conceded that as between Griffin and the defendant the title to the corn did not pass to Griffin until the same was paid for. Notwithstanding this, the defendant intrusted Griffin with the possession and control of the property. There is some evidence tending to show that the sale was in fact a sale upon credit, and that both parties understood that the money to pay the purchase price was to be raised by a shipment of the corn by Griffin, and the discount of a draft drawn on the faith of the bill of lading thereof. The defendant himself testified on the trial: "It happens very often on the dock that purchasers buy grain and get the bill of lading and raise money on it to pay the purchase price"; that witness "knew Mr. Griffin did that business." Taking the most favorable view of the facts for the defendant, both he and the plaintiffs are innocent sufferers from the fraud or defalcation of Griffin; assuming they both occupy that position, which should suffer for his acts? The rule on this subject was clearly enunciated by Justice ASHURST in Lickbarrow *v.* Mason, 2 *T. R.* 63, and has been universally recognized and followed since: "When-

---

* Commented on in 2 *Bosw.* 433.

Rawls v. Deshler.

ever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it."

Applying this doctrine to the present case, we have no difficulty in saying the defendant must sustain the loss occasioned by the acts of Griffin, and not the plaintiffs. The defendant intrusted Griffin with the corn and gave him the *indicia* of title. He was therefore enabled to deal with it as his own. He shipped it in the usual course consigned to the plaintiffs, received a bill of lading therefor, which was negotiable, and did negotiate it, and the plaintiffs became the owners and holders thereof in good faith and for a valuable consideration. Such negotiation of the bill of lading and transfer thereof to these plaintiffs, constituted them *bona fide* holders and owners of the corn, and the defendant's right of stoppage *in transitu* for the purchase money was cut off and terminated. Lickbarrow *v.* Mason, *supra;* Hollbrook *v.* Vose, 4 *Com. Law Rep. N. S.* notes 9 and 10, and cases there cited.

It is difficult to withdraw this case from the doctrine of Hollingsworth *v.* Napier, 3 *Cai.* 182, and the leading and controlling facts in each are nearly identical. Napier sold to one Kinworthy, from whom the plaintiff derived title, ten bales of cotton, under the following circumstances:

The cotton was lying in the public store at the quarantine ground at Staten Island, and the defendant sold it to Kinworthy in the city of New York, "*for cash payable on delivery.*" Defendant made out a bill of parcels for the cotton, marked in the margin "*cash,*" but containing no receipt for the money. This, together with an order on the storekeeper for the cotton, had, either by the defendant or his clerks, been delivered to Kinworthy. He, without either paying for the articles or having taken possession of them, met the plaintiff at a public house, and producing the bill of parcels and order, offered them for sale at the same price for which they had been bought, alleging as a reason that he had been pushed for money. The plaintiff, on this, agreed to become the purchaser, received the bill of parcels and order, and paid for the goods by giving part in cash, and the balance in a check of a third party. Having made the purchase, the plaintiff went to the quarantine ground

IV.—2

the next day, but at so late an hour, that in the usual course, it was impossible to have the goods shipped that night, and producing the order demanded the cotton, on the turning out of which to him, he paid the amount of the storage, had the bales marked with the initials of his name, and then returned them into the store. The morning after this the defendant went to the quarantine ground, took the cotton and sold it, and the plaintiff brought trover to recover for the value of his cotton thus converted. The plaintiff had a verdict, and the supreme court refused to grant a new trial.

The principles settled in the case of Bank of Rochester *v.* Jones, 4 *N. Y.* 497, would seem to be decisive of the present case. In July, 1843, Foster applied to the bank to borrow nine hundred and fifty dollars for the purpose of buying two hundred barrels of flour of W. Ely. The cashier refused to make the loan without security. Foster proposed to procure the forwarder's receipt for the two hundred barrels of flour to be purchased with the money received from the bank on the loan, and to leave such receipts with the bank as security for the acceptance of the draft to be drawn on the defendant. Foster delivered the draft and forwarder's receipt to the cashier, and the bank discounted the draft. The bank forwarded the draft with the receipt attached, to their collecting agent at Albany, to be presented to the drawee, Jones, for acceptance. Jones took off the receipt and refused to accept the draft. Jones received the flour and before the commencement of the suit the bank demanded the flour of Jones. The bank recovered; and the following propositions may be considered as settled by this court:

1. The delivery of the carrier's receipt to the bank was a symbolical delivery of the flour.

2. The delivery of the carrier's receipt or bill of lading to the bank for a valuable consideration passed to the bank the legal title to the same.

In the present case, the White Bank had the legal title to this corn, and the plaintiff, by the acceptance and payment of the draft of Griffin, and the delivery and transfer to them, of the bill of lading, succeeded to all the rights of the bank, and the legal title to the flour passed to them.

It is insisted on the part of the appellant, that the instrument produced was not properly a bill of lading, as it was not signed by the master of the boat.

In Dows v. Greene, 32 *Barb.* 490, the bill of lading was signed by the agent of Miles & Walker, who were partners dealing in produce, and agents of a transportation company and members thereof. Bloss obtained the bill of lading in good faith, who transmitted it to one Mack, who obtained from the plaintiffs in that action an advance upon the faith thereof.

The supreme court held that the instrument under which the plaintiffs claim was a bill of lading. If not exactly formal it was substantially such. It did not detract from its force or validity that it purported to be the act of the owners of the goods and also of the carrying vessel, instead of their agent, the master or captain. Not only from its similarity to other bills of lading, has this been argued to possess the character of such a paper, but this very instrument has in several instances been adjudged to be a bill of lading. That question is, therefore, no longer open for discussion. Citing Dows v. Perrin, 16 *N. Y.* 325, 328 ; Dows v. Greene, 16 *Barb.* 72 ; Dows v. Rush, 28 *Id.* 157, 183 ; Bank of Rochester v. Jones, 4 *N. Y.* 497, to which may be added Dows v. Greene, 24 *Id.* 638.

In this connection the remarks of Baron PARK in Bryans v. Nix, 4 *Mees. & W.* 775, 789, are apposite and conclusive. He says : " The true question is, what is the meaning and effect of the two documents by whatever name they are called, coupled with the letter from Tempany of February 2, followed by the acceptance by the plaintiffs of Tempany's draft ? It seems to us to be clearly this, that Tempany agrees that the oats therein specified shall be held from that time by the boat master for the plaintiffs in their own right, provided they accept the bill as a security for its payment, that the master agrees so to hold them, and that, by the plaintiffs' assent and acceptance of the bill, the constitutional agreements become absolute. The transaction is, in effect, the same as if Tempany had deposited the goods with a stake-holder, who had assented to hold them for the plaintiffs in order to indemnify them. As evidence of such a transaction, it is wholly immaterial whether the instru-

ments are bills of lading or not; and it might equally be proved through the medium of carriers or wharfingers' receipts or any other description or document, or by correspondence alone. If the intention of the parties to pass the property, whether absolute or special, in certain ascertained chattels, is established, and they are placed in the hands of a depositary, no matter whether such depositary be a common carrier, or ship master employed by the consignor, or a third person, and the chattels are so placed on account of the person who is to have that property, and the depositary assents, it is enough, and it matters not by what documents this is effected; nor is it material whether the person who is to have the property be a factor or not, for such an agreement may be made with a factor as well as any other individual." In De Wolf *v.* Gardner, 12 *Cush.* 19, SHAW, Ch. J., cites this case with approval.

It seems to me that the principles settled in the case of Davis *v.* Greene, and affirmed in this court, establish the plaintiffs' right to recover.

In Crocker *v.* Crocker, 31 *N. Y.* 507, this court held that when a plaintiff, by his own voluntary act, has, through misplaced confidence, conferred the apparent right of property in bank stock upon a third party, a *bona fide* purchaser of such stock from such party will be protected against any secret trust in favor of the plaintiff. In that case, a learned judge of this court said: "The plaintiff had, by his own voluntary act, caused Stephen Crocker to be invested with the legal title to the stock, and suffered him to deal with it as his own for years. Having through misplaced confidence conferred upon him the apparent right of property as owner, a *bona fide* purchaser of the stock from him, in the course of commercial dealing, without notice, would be protected in his title against any latent equities of the plaintiff. Foster & Livingston, and Skinner & Co., lent their notes and acceptances to Stephen Crocker, on the credit of the stock transferred to them, without notice of the secret trust in favor of the plaintiff, and were *bona fide* purchasers; for the term "purchaser," in this connection, includes one who advances or incurs responsibility upon credit of property. In Wait *v.* Green, 36 *N. Y.* 556, a Mrs. Cornins owned a house, and sold it to one Billington, and delivered the

same to him, taking his note for the amount of the purchase, with a memorandum at the foot of it, " that the title to the house was to remain in Mrs. Cornins until the note was paid." Billington sold the house to the defendant, for value and without notice, and he was a *bona fide* purchaser. Mrs. Cornins sold the note to the plaintiff, and the same not being paid at maturity, he demanded the house of the defendant, and on refusal brought his action to recover the value of the house. This court held that the defendant had acquired a good title to the house, and that the plaintiff could not recover.

If there could be any doubt on this point, I am unable to see why section 1 of the factors' act does not meet this precise case. *L.* 1830, c. 179, p. 203. It is as follows: " Sec. 1. After this act shall take effect, every person in whose name any merchandise shall be shipped, shall be deemed the true owner, so far as to entitle the consignee of such merchandise to a lien thereon. First, for any money advanced or negotiable security given by such consignee, to or for the use of the person in whose name the shipment shall have been made." Now, in the case at bar, all these requirements are combined.

1. There was a shipment of merchandise, in the name of Griffin, consigned to these plaintiffs.

2. The statute declares in such an event he, the shipper, is to be deemed the true owner of such merchandise.

3. These plaintiffs advanced the amount of this draft to and for the use of Griffin, in whose name the shipment was made, and they have, therefore, a lien upon such merchandise for the money so advanced.

These plaintiffs had no notice by the bill of lading or otherwise, at or before the said advance of money, that the person in whose name the shipment was made, was not the actual and *bona fide* owner of said merchandise.

The lien was not divested or impaired by the action of the defendant in taking the corn from the canal-boat, by the instrumentality of an action of replevin, or by the proceedings in that action. They were *res inter alios acta* and not affecting the rights of these plaintiffs.

The judgment of the superior court of Buffalo was correct, and should be affirmed, with costs.

· All the judges concurred, except GROVER, J., who was for reversal, and J. M. PARKER, J., not voting.

Judgment affirmed, with costs.