The City Bank, Respondent, *v.* The Rome, Watertown, and Ogdensburgh Railroad Company, impleaded, etc., Appellant.

Delivery of a bill of lading, with intent to pass the title, has that effect, although the bill is drawn to order and is not indorsed.

G. shipped wheat as owner and consignee, to his own order, and received from the masters of the vessels bills of lading. He delivered these bills to the plaintiff as security for moneys advanced on his own drafts, drawn upon E., indorsing the several bills, " deliver to E. on payment of the accompanying draft." E. refused to accept the drafts and they were protested. When the wheat was shipped, G. delivered to the masters duplicates of the bills of lading, except that they were signed by G., and not by the master, and these were delivered, with the wheat, to the defendant's lessee at its warehouse. G., through his agents, who had knowledge of the dishonor of the drafts, sold all of the grain to different purchasers, who paid value therefor. A portion was delivered to these purchasers, when the plaintiff demanded of the defendant the balance remaining in its warehouse, and delivery thereof was refused.—*Held,* that the title to the wheat was in the plaintiff, and he could maintain replevin therefor.

(Argued September 26th, 1870; decided December 28, 1870.)

Appeal from an order of the General Term of the Supreme Court in the fifth district, affirming a judgment in favor of the plaintiff entered on a trial without a jury.

A. L. Groundwater, of Toronto, C. W., drew drafts on C. P. Egert of Prescott, C. W., for $3,200, $3,200, $4,686, total $11,086, and procured the plaintiff to discount them at Toronto. At that time Groundwater had wheat on board of vessels at Toronto, consigned to his own order at Cape Vincent, and he transferred to the plaintiff three bills of lading of the vessels containing the wheat, as security for the payment of the drafts. On the back of each bill of lading was indorsed, by Groundwater, an order to deliver the wheat to C. P. Egert, on his paying the accompanying drafts. The drafts were forwarded by the plaintiff, to Prescott, and were protested for non-acceptance. They were forwarded to Prescott, October 2d and 6th.

The three cargoes were shipped and drafts dated, viz. :

Shipped, September 29th, draft September 30th.

Shipped, October 1st, draft October 2d.

Shipped, October 4th, draft October 6th.

The masters of the vessels respectively, received from Groundwater duplicates of the bills of lading, except that they were signed by Groundwater, and not by the master, and were not indorsed.

The several cargoes were delivered into the defendant's warehouse, October 6th, 7th, and 8th.

On the 9th day of October (the day when the drafts were protested), Groundwater was in Jefferson county, and then gave to F. R. Burt & Co., who were partners of C. P. Egert, a written order for the wheat.

Two or three days before this written order, Groundwater had verbally arranged with Burt & Co. to sell the wheat, and they had disposed of a portion of it.   They sold all the grain to various persons who paid value therefor, and a large amount was delivered.

Before they took the order from Groundwater, Burt & Co. knew that Groundwater had drawn against the wheat on their partner Egert; that the drafts were unpaid. About October 25th, the plaintiff demanded the wheat remaining in the defendant's warehouse, and the defendant refused to deliver it.   The plaintiff thereupon replevied the wheat.   By the plaintiff's charter the bank is located at Montreal, with the right to have a branch at Toronto.   The trial was by the court, without jury.

Among others, the court found as facts, the plaintiff's corporate existence, the making of the drafts, the transfer of the bills of lading as security, protest of the drafts, conversion of the wheat by the defendant, value of the wheat, and the amount due on the drafts, including interest.

On these facts the court held, that the plaintiff was a corporation, and that the three drafts were lawfully discounted; that the transfer of the bills of lading vested in the plaintiff title to the wheat ; that the defendant's refusal to deliver was

a conversion ; that the plaintiff was entitled to judgment for delivery of the wheat; and if it could not be delivered, then for the balance due on the drafts, with interest and exchange.

Judgment was entered June 25th, 1864, for $5,783.31. From this judgment the defendant appealed to the General Term, in the fifth judicial district, and the court ordered affirmance of the judgment. The defendant appealed to this court.

*John Ganson,* for the appellant, cited *Rawles* v. *Deshler* (3 Keyes, 572); *Smith* v. *Lyons* (1 Seld., 41); *Wait* v. *Green* (36 N. Y., 556).

*Starbuck & Sawyer,* for the respondent.

HUNT, C. Many points were raised upon the trial, and argued in the court below, that are not now insisted upon. The determination of the questions of fact was of more difficulty than the disposition of the questions of law. The latter are all that are presented for our consideration. I will take up, in their order, the objections to the recovery now presented by the counsel for the appellants.

It is alleged that the plaintiff failed to establish any title to the wheat in question, because the bill of lading was not indorsed to the plaintiff, but to C. P. Egert. If I understand the implication of the appellant's points, it is substantially conceded that the transaction amounted to an hypothecation of the wheat as security for the payment of the debt in the event that Egert failed to accept and pay the draft. In the defendant's supplemental points, it is expressly conceded that a special property in the wheat passed to the plaintiff. Three cases are cited to show that a special property will not authorize an action for its recovery. (*Rawles* v. *Deshler*, 3 Keyes, 572; *Wait* v. *Green*, 36 N. Y., 556; *Ballard* v. *Burget*, 40 N. Y., 314.) These cases do not sustain the position. The contrary has been held in this State many times (*Dezell* v. *Odell*, 3 Hill, 215; *Miller* v. *Adsit*, 16

Wend., 335; *Wheeler* v. *McFarland*, 10 Wend., 318.) This title is sufficient to justify the plaintiff's claim and sustain their recovery of the value of the wheat.

I suppose, however, that the title to the wheat passed to the plaintiff by the delivery of the bill of lading. The delivery of a bill of lading with intent to pass the title has that effect, although it be not payable to "assigns," or although if so payable, it be not indorsed. (Par. Merc. Law, 346; 2 Kent's Com., 207; see also *Chandler* v. *Belden*, 18 J. R., 157.) *The Bank of Rochester* v. *Jones* (4 Com., 497) is quite in point to this question. One Foster shipped 200 barrels of flour from Rochester to B. P. Jones in Albany, taking from the master of the boat a receipt simply in these words:

"Received, Rochester, July 15th, 1843, of W. C. Foster, two hundred barrels of flour to be forwarded to B. P. Jones, Albany, in good order without delay, subject to forty-five cents freight.

"R. D. HANNAH."

To enable Foster to buy and ship this flour, it was agreed between him and the plaintiff, that the plaintiff would advance $950 for the purpose, Foster to procure the forwarder's receipt of the flour to be purchased, and leave such receipt with the bank as security for the acceptance of a draft to be drawn on Jones, the defendant. Foster delivered the draft and receipt to the bank and received the money on the draft. It was a part of the parol agreement that the flour should be held by the bank as security; that Jones should accept the draft, the bank to have the right to hold and sell the flour. If accepted the receipt was to be for Jones' security, and the bank was to look to him. The bank forwarded the draft for acceptance with the receipt pinned to it, which was presented to the defendant, Jones, for acceptance. Jones took off the receipt, retained it and refused to accept the draft. He then sent his clerk to Utica, who there met the flour and sold it. It was held, 1. That Jones obtained no title to the flour. 2. That the discount of the draft by the plaintiff, and the delivery to it of the receipt, amounted to a transfer of the flour to the

bank, in trust to deliver it to the defendant in case he accepted the draft, or in case of his refusal, in trust to sell the flour and pay the draft.

It will be observed that the receipt in that case was in the name of Jones alone as consignee, with no words of negotiability, and that there was no indorsement by him. Still the mere delivery of the receipt to the bank under the circumstances, transferred the title to the flour, and the bank recovered against Jones. (See also 3 Kent's Com., 207; Par. Merc. Law, 497.) In the case before us, it is expressly found as a fact, that the bills of lading were delivered to the plaintiff as collateral security for the payment of the draft.

The appellant insists, secondly, that if the plaintiff did acquire the title to the wheat or a special property therein, it so conducted itself as to forfeit its rights as against subsequent innocent purchasers for value. This argument is based upon bringing in juxtaposition two of the findings of fact by the judge, viz.: That the purchasers of the wheat paid for the same in good faith, without notice of any claim thereon, and the further finding that Groundwater had from the plaintiff an implied authority to dispose of the wheat in such way, consistent with the rights of the plaintiff therein, as would enable Groundwater to raise the money to pay the drafts; but that he had no authority to dispose of it, except subject to the plaintiff's lien, and that such lien would not be discharged until the drafts were paid. The appellant argues that this is a finding to the effect that the sale was to be valid, if the proceeds were paid to the plaintiff, and void if not. He omits to consider the further finding, that the plaintiff did not know that Groundwater intended to make any other disposition of the wheat than to deliver it to Egert or Burt & Co., on acceptance of the drafts, nor was Groundwater authorized by the plaintiff to make any other disposition of the wheat. Even in this limited view of the findings, it is difficult to see where would be the illegality, when we remember that it is a finding not of law, but of fact, and that the findings of fact are conclusive upon us. Although such an

agreement would be extraordinary, it would not be illegal. Any restrictions, negative or affirmative, may be placed upon the power of a limited and special agent. If he sells in violation of it, his principal is not bound and no title passes. But the judge finds, as a further fact, that these purchasers knew that the wheat had been discharged from vessels at Cape Vincent, and they did not make any inquiry for bills of lading. How could they be protected, when guilty of such neglect?

It is difficult, however, to see in what way the point insisted upon is available to the defendant. The defendant was a warehouse-man, who retained and refused to deliver the wheat after notice of the plaintiff's claim, and then actually delivered it to other parties. It is the law that a carrier or a warehouse-man is bound to ascertain whether a bill of lading was delivered to the shipper; and if delivered, he must retain the property until it is demanded by one claiming under that title. (*Howard* v. *Shepard*, 9 M. Gr. & Scott, 296 ; *Tyndal* v. *Taylor*, 4 Ellis & Bl., 219.) If the purchasers or the defendants had inquired of the master of the vessel they would have learned that a formal bill of lading had been issued. They could scarcely have failed, in fact, to know what the law inferred, that the title to the goods had passed under it, and was then in some party other than the shipper.

The defendant is not a *bona fide* purchaser, nor were the purchasers *bona fide* purchasers in law. The defendant's duty, as a warehouse-man, to deliver only to the party holding the bill of lading was clear, and the duty of the purchaser to inquire for the bill of lading was equally clear.

The knowledge that the title followed the bill of lading affected all parties. The absence of this document at Cape Vincent and the failure of the purchasers to inquire for it, are conclusive, under the cases above cited, that no title passed to them by Groundwater's sale.

The appellant insists, in the third place, that the leaving with the plaintiff the drafts given to Groundwater on the sale of the wheat, to be applied on his demand and their surrender by the plaintiff without consideration, together

with the other facts in the case, operate as an estoppel on the plaintiff in asserting a claim to the wheat in question, as against the *bona fide* purchaser. This point, in the form that the plaintiff knew that Groundwater was going to Cape Vincent to sell the wheat, and that the plaintiff consented to its sale, was urged on the trial as a matter of fact, and is discussed in the opinion below. It is not an estoppel if at all, by record or deed, creating an estoppel in law. In any event it was a question of fact, and should have been submitted as a question of fact on the trial. I do not perceive that it was presented in such form to the judge, nor do I see how he could have held it to be an estoppel consistently with his other findings, that the plaintiff did not know that the drafts were the proceeds of the wheat sold discharged of their lien. If the plaintiff surrendered certain drafts in ignorance of the fact that they were connected with their lien, or that they were the proceeds of the wheat discharged of their lien, it is difficult to see how it can be, in fact or in law, a discharge of their lien.

The defendant has not the necessary facts before the court, on which to base this argument.

The only remaining point made by the appellant's brief, is that the railroad company had not the possession of the wheat when the plaintiff demanded it. This, too, is a question of fact, which does not arise upon the case before us.

Many other questions, some of them of much interest, were argued in the court below, and passed upon in the opinion of the Supreme Court judges, accompanying the case. They are not now insisted upon, and we are not called upon to discuss them.

The judgment should be affirmed with costs.

All concur for affirmance.

Judgment affirmed with costs.