MANUFACTURERS AND TRADERS' BANK OF BUFFALO V. FARMERS AND MECHANICS' NATIONAL BANK OF BUFFALO.

*Consignor and consignee — Bill of lading — Factors' act (laws 1830, chap. 179) — apparent owner — when acts of, bind true owner.*

A quantity of wheat was shipped by propeller from Milwaukee to Buffalo, consigned to W., and a draft made upon W. for the purchase price. To meet this draft, W. procured credit from the plaintiff, the M. bank, and assigned as security the bill of lading of the wheat. The draft was paid by plaintiff. Before the arrival of the wheat at Buffalo, W. agreed to sell it to N. Upon its arrival, W. took charge of it and placed it in an elevator connected with the

Erie Railway. On the same day, W. gave N. an order for the wheat, N. promising to pay for it the next day. N. took possession of the wheat, shipped it by the Erie Railway to New York, consigned to a firm there, and took a bill of lading, in which it was stated that the wheat was subject to the order of defendant, the F. bank. Upon the delivery of this bill, defendant, in good faith, discounted a draft by N. upon the consignees in New York. In an action against defendant for the conversion of the wheat,

*Held,* that the provisions of the factors' act (Laws 1830, chap. 179), did not apply to or include defendant, who was not a consignee or factor of N. Said act only applies to consignees named as such in the bill of lading.

*Held,* also, that W., being the general owner of the wheat, his acts bound the plaintiff as to those dealing with him in good faith and without notice. W. having clothed N. with the apparent ownership of such wheat, and thereby enabled him to obtain credit from defendant, plaintiff could not recover for the conversion of the same.

THIS is an action of trover for the conversion of 15,000 bushels of wheat. The cause was tried at the circuit in Erie county, where a verdict was found for the plaintiff in the sum of $23,793.66, and the case ordered to be heard upon exceptions at the general term in the first instance, and judgment in the meantime suspended.

*John Ganson,* for plaintiff.

*W. W. Green,* for defendant.

E. DARWIN SMITH, J. The questions presented for our consideration in this case arose upon, and are limited to, the exceptions taken at the circuit.

The first exception arises upon the defendant's motion for a nonsuit at the close of the plaintiff's case.

The defendant's counsel stated at the time two grounds for such motion:

1. That the plaintiff had no property in the wheat, and,

2. That the demand was not accompanied by any evidence of the plaintiff's right to the possession. The motion was denied, and the counsel duly excepted.

At this stage in the trial the plaintiff had proved that the wheat in question was purchased at Milwaukee on the 8th of November, 1871, by the firm of George Jones & Co., for S. K. Worthington of Buffalo, and paid for by a draft on said Worthington, drawn by said Jones & Co. to the order of D. Ferguson, cashier, and which draft was paid at the plaintiff's bank from the proceeds of a note

of Worthington, discounted at said bank on the 11th of November following, the bank at the same time receiving from said Worthington an indorsement of the bill of lading for said wheat, made at Milwaukee by the shippers thereof, the Western Transportation Company, in the form following, so far as it is necessary to state the same :

"MILWAUKEE, *November* 8, 1871.

"Received of George L. Jones & Co. the following packages (contents unknown), in apparent good order :

| Account of D. Ferguson.<br>Cash.<br>Care of S. K. Worthington,<br>Buffalo, N. Y.,<br>Prop. Mohawk. | Fifteen thousand (15,000) bushels. of wheat.<br>Milwaukee to Buffalo, seven cents per bushel, to be transported, etc." |
| --- | --- |

The plaintiff had also proved that said wheat had come into the possession of the defendant, and was in its possession at the time of a demand for the delivery thereof before the commencement of the suit, which was refused.

The plaintiff had thus shown title to said wheat in itself, by the transfer and delivery of such bill of lading upon Nov. 11th, to said bank, and as the case then stood it was clearly entitled to recover for said wheat, and the motion for a nonsuit was properly denied.

At the close of the case the defendant's counsel submitted to the circuit judge seventeen propositions or requests to charge, and asked the court to rule and charge, as matter of law, in accordance with such requests or propositions, which the circuit judge refused to do, and the counsel thereupon duly excepted to such decision.

Upon the argument, or in the points of the counsel for the defendant, these propositions or requests are not particularly discussed, or either of them. But the argument and points cover these propositions in a general way, as if the whole case, upon the law and the evidence, was open for our consideration.

The evidence given on the part of the defendant, in connection with the plaintiff's evidence, given before it rested and in reply, clearly establish, I think, that Worthington was the general owner of this wheat; that he had contracted to sell it to one Nims upon Nov. 11th, before its arrival at Buffalo; that on the arrival of the propeller containing said wheat upon Nov. 16th, he took charge of

the same, as he was authorized to do by the express terms of the bill of lading, "in case the said bill of lading, properly indorsed, was not delivered to the agent of the shipper on or before the arrival of said property at its destination"— (which it appears was not done); that said Worthington caused said wheat, by arrangement with said Nims, to be stored in an elevator at Buffalo, named the Niagara elevator, being an elevator connected with the track of the Erie railroad, and to which its cars had ready access, and where the same was unloaded on the morning of the 17th of November into bins called railroad bins, and credited to Worthington or his order on the books of the elevating company; that afterwards, on the same day, between the hours of twelve and one o'clock, at the instance of Nims, telling him he could not pay for the wheat that day, but could the next day if he would give it to the Erie railway company to his own order, Worthington drew and delivered to said Nims an order in the words following:

" BUFFALO, <i>November</i> 17, 1871.

"*Prop. Mohawk or Niagara Elevator :*

"Deliver to Erie railroad fifteen thousand bushels Mil. wheat, more or less.

"14,943.12.

"15,000 bushels.           S. K. WORTHINGTON."

The evidence, I think, shows that the figures, 15,000, were originally on the bill, but the figures, 14,943.12, were put on it by a clerk of the railroad company on its presentation at one of their offices, when the bill of lading hereafter mentioned was signed. The bill also has upon it the words, "subject to ——— order," with an erasure over them in ink.

The above described order, it appears, was taken by Nims to Caldwell, the commercial freight agent of the Erie railroad, at Buffalo — with whom Nims had, three or four days previously, agreed upon the rate of freight for said wheat — who indorsed on said bill, at the foot thereof, the words and figures as follows:

"Nov. 18 — Erie 14943, 12.

"For O. L. Nims, agent, 37 cars."

And signed a bill of lading then presented to him by said Nims, and delivered the same to him in the words and figures following — so far as I think necessary to state the same:

"ERIE RAILWAY COMPANY,
"BUFFALO, *November* 17, 1871.

"Received from O. L. Nims, Agent, in apparent good order:

| | |
|---|---|
| "Ac. O. L. Nims, Agt., · <br> Care J. M. Fisk & Co., <br> New York. <br> Subject to order <br> Farmers & Mechanics' Nat. Bank, <br> Buffalo. | 15,000 bush. 2 Milwaukee wheat, <br> more or less, freight to New York <br> 15 cents per bushel, free of light- <br> erage, at owner's risk of strict <br> weight or measure at point of de- <br> livery. Owner to load and unload. |

"To be transported by Erie railway company to their warehouse at New York, ready to be delivered to the party entitled to the same, etc., etc.

(Signed) "L. D. CALDWELL, *C. F. Agent.*"

This bill of lading, Nims, on the same day (November 17th), took to the Farmers and Mechanics' national bank, and then indorsed and delivered the same to the said bank, with his draft at 30 days upon J. M. Fisk & Co., for $18,750, which was then discounted by said bank upon the security of the said bill of lading.

It appears, also, that said Worthington had a policy of insurance on said wheat, which was canceled after it was loaded in the cars on the 18th; and that on the same day Worthington and Nims met, and Nims told him he had not made his arrangements so that he could pay him that day, but to send in the bill the next day and it would be paid. The next day was Sunday, and on the following day, Monday, Worthington sent in his bill for payment, which was in the words and figures following:

"1871.                    O. L. Nims & Co.,
"Nov. 14.          Bought of L. K. Worthington,
             "To 14,983.12 bu. Mil. Wheat @.
"140½ ........................................ $20,995 19
          "Cargo Mohawk to arrive.
                           "Fire insurance paid."

Nims, it appears, failed on the 20th or 21st, and in the meantime the wheat loaded on the said cars had been sent forward to New York.

Upon these facts, substantially undisputed, the question is presented whether any error was committed by the circuit judge in his

charge and refusals to charge as requested, as specified in the exceptions stated in this case.

The third point submitted in the elaborate argument by the counsel for the defendant, is as follows:

" *Third.* The Farmers and Mechanics' National Bank, as the consignee in the shipping bill of the Erie railway company of November 17th, is entitled to its lien for the amount of the draft it discounted at the request, and for the use of, Nims, in whose name the wheat was shipped and receipted."

" 1st. The delivery of the shipping bill by the Erie railway company to the bank by Nims, the shipper, upon the delivery, possession and indorsement, of which the bank agreed to, and did discount the said draft, protects it to the extent of its advance in the conceded absence of any notice that Nims was not the actual and *bona fide* owner of the wheat."

The counsel claims that " the bank stands behind and within the first section of the factors' act, independent of the question whether Nims was the true owner of the wheat."

So far as relates to the factors' act, I think the argument and claim of counsel is unsustainable. The first section of the factors' act so called, which is an act (Laws 1830, chap. 179), entitled " An act for the amendment of the law relating to principals and factors and agents," is as follows:

" After this act shall take effect, every person in whose name any merchandise shall be shipped shall be deemed the true owner thereof, so far as to entitle the consignee of such merchandise to a lien thereon: " 1st. For any money advanced, or negotiable security given by such consignee, to or for the use of the persons in whose name such shipment shall have been made. 2d. For any money or negotiable security received by the persons in whose name such shipment shall have been made, to or for the use of such consignee."

The provisions of this act do not apply to or include the Farmers and Mechanics' Bank. Such bank was not a factor or consignee of Nims; and Fisk & Co., the consignees, did not accept the drafts. This act only applies in favor of consignees named as such in the bill of lading. It was designed to protect factors and agents and consignees appearing to be such on the face of the bill of lading, and who might be induced, on the faith of such bills, to pay money or incur liabilities for the principal or shipper of goods.

In the case of *Dows* v. *Greene*, 24 N. Y. 640, and *Dows* v. *Rush*,

DECEMBER TERM, 1873. 401

Manufacturers', etc., Bank of Buffalo, v. Farmers', etc., Nat. Bank of Buffalo.

28 Barb. 186, Dows and Cary, the plaintiffs, were the consignees named in the bill of lading.

In the case of *Bank of Rochester* v. *Jones*, 4 N. Y. 497, the forwarder's receipt for the flour obtained by the owner was delivered by him to the bank at the time of the discount. This was equivalent to the assignment of the bill of lading by the owner. So in the case of the *City Bank* v. *R., W. & O. R. R. Co.*, 44 N. Y. 136, the wheat mentioned in the bill of lading was consigned on its face to the order of the owner, and was indorsed by him and delivered to the bank as security for his drafts, with direction to deliver the wheat to one Egart, on whom the drafts were drawn, on his payment of the drafts. The bank in that case was the assignee in effect of the bill of lading, for its security.

The cases all hold that a bill of lading, to a certain extent, is negotiable and binds the property, and that an assignment of it transfers title to the goods whenever the shipper has any title to pass by sale or assignment, and all his title, from *Lickbarrow* v. *Mason*, 2 T. R. 63, and S. C., 6 East, 21, down to the last-mentioned case in the court of appeals.

The defense of the Farmers and Mechanics' Bank, if sustainable, must rest upon other grounds, and, I think, it can only rest upon the ground that Worthington had, by his own act or fault, clothed Nims with the possession and apparent title to this wheat.

While the plaintiff, by the transfer to it of the bill of lading of this wheat given by the shippers at Milwaukee, acquired a title to it as security for its advance to Worthington, to enable him to pay his acceptance for the price ; yet, as was well remarked by the learned circuit judge in his charge to the jury, "when the property came to Buffalo, and by the consent and allowance of the plaintiff it went into the possession of Worthington and was held by him in store subject to his order, he was in a situation where he could deal with a *bona fide* purchaser in such a manner as to deprive the plaintiff of its security. As against these persons, he could, as he did, deal with it as his own. As the general owner of the property, his acts bind the Manufacturers and Traders' Bank precisely, as to such persons, as if it had no title to or lien upon the wheat.

As a general proposition, a man cannot be deprived of his property without his consent, and also it is equally true that no one can transfer to another a better title than he has himself. But these propositions are not unqualifiedly true. In respect to the sale and

transfer of personal property, a party who has simply delivered possession conditionally upon a contract of sale, or who has been induced by fraud to part with the possession of his goods, will lose the same in case they are sold and delivered by his vendee to a *bona fide* purchaser without notice of the condition or the fraud. Such is the case in *Mowrey* v. *Walsh*, 8 Cow. 243, and *Root* v. *French*, 13 Wend. 572; *Evans* v. *Salters*, 12 Pick. 306; *Saltus* v. *Everett*, 20 Wend. 272, and in numerous cases. In *Stevens* v. *Hyde*, 32 Barb. 175, the cases are collected and discussed. In the case of *Rawls* v. *Deshler*, 3 Keyes, 572, the order was as follows:

"Hatch Elevator: — Deliver A. L. Griffin, Esq., or order, 4,328 47-10 bushels white corn, cargo Potomac, subject to my order until paid for."

The delivery in this case was conditional, and Judge DAVIES says of it: "It may be conceded that the title did not pass until the corn was paid for," yet it was held that an assignment of the bill of lading, procured by Griffin as security for a draft discounted for the consignee, carried and held the property."

In this case it seems to me that the delivery of the order to Nims, for the delivery of the wheat to the Erie railroad, was a virtual delivery of the same to Nims. The order was delivered to Nims. Nims had contracted to purchase the wheat. He had agreed with the Erie Railway Company to transport it to New York, and had engaged or been assigned thirty-seven cars for that purpose. The wheat had been sent to the Niagara elevator, at his request, to facilitate the delivery to said railway. Under the facts, the Erie railroad was in fact, and in legal effect, the agent of Nims, to receive this wheat and transport the same to its destination. No terms or conditions were imposed, in the order or otherwise, upon the railroad or upon Nims, except, doubtless, the implied condition that he was to pay for the wheat before it left Buffalo. But the railway company knew of no such conditions, did not receive the wheat upon any condition or trust, or notice of any trust. Worthington had made no arrangement for or with the company to transport it to New York. It was in no sense loaded or received for him, or upon his procurement, unless Nims was his agent; and if so, he would be bound by his acts as such.

In another view, the delivery of this order to Nims virtually gave him the *indicia* of title to or the right to control the wheat. He

DECEMBER TERM, 1873.    403

Manufacturers', etc., Bank of Buffalo, v. Farmers', etc., Nat. Bank of Buffalo.

was the vendee of it, with credit given for the payment till the next day, and with delivery to his carrier in the mean time.

In this respect, it is like the case of *Rawls* v. *Deshler, supra.* The property in that case was delivered "subject to the order" of Deshler "until paid for." This condition was on the face of the order. In this case no condition appeared on the face of the order. The words "subject to ——— order" were, before delivery, erased upon the face of the order—or the blank was not filled—so that, in either view, it was a general unqualified order to deliver to the railroad, in the hands of Nims, and was not taken or received by deception or fraud, but freely delivered by Worthington.

It is like the voluntary delivery of property to a vendee, in expectation of payment within a day or two, as was the case of *Downs* v. *Green,* 24 N. Y. 638. In that case it was considered, between the parties, a sale for cash, but the wheat was delivered to the owners to enable the vendee to receive the money, as was the case, doubtless, in *Rawls* v. *Deshler,* and probably in this also.

These facts, I think, bring the case within the rule asserted in *Dows* v. *Green,* and in the case of *Rawls* v. *Deshler,* and in the leading case of *Lickbarrow* v. *Mason,* 2 T. R. 63, that, "whenever one of two innocent parties must suffer by the acts of a third, he who enabled such third person to occasion such loss must sustain it."

Worthington gave Nims the power to get the bill of lading, which gave him the apparent title, and thus enabled him to obtain by its transfer the money of the Farmers and Mechanics' Bank, which is conceded to be a *bona fide* holder of the bill.

The facts in the case are all within a narrow compass, and there is not, that I can see, any essential conflict in the evidence upon any of the material facts. The instruction of the circuit judge to the jury, which was duly excepted to, that "if they believed the arrangement for the delivery of the wheat to the railroad was as stated by Worthington, the plaintiff was entitled to recover," I think erroneous. The instruction is to be considered in view of all of the facts of the case taken in connection with the testimony of Mr. Worthington.

Viewing the testimony of Mr. Worthington in the light of the conceded and undisputed facts of the case, the defense, it seems to me, was established. The question is, not what Mr. Worthington intended, but what he did, which tended or contributed to clothe

Nims with the possession and apparent right to control this wheat. He did enable him to get the wheat into the hands of the carriers employed by Nims, and under circumstances which led the carrier to suppose, and act upon the supposition, that he was the real owner. This was sufficient to enable Nims to perpetrate the fraud upon him and upon the bank, which, if not contemplated, was in fact consummated through the instrumentality of this bill of lading.

I have not particularly discussed the various exceptions arising upon the requests of the counsel, but it seems to me that they embrace a sufficient number of sound propositions, with the exception to the charge, to make it our duty to grant a new trial upon the principles above stated and discussed.

A new trial should, therefore, be granted with costs to abide the event.

*New trial granted.*