McCOMBIE *et al.* v. SPADER *et al.*, appellants.

*Warehouseman — receipt of — effect of where goods are not in store — transfer of — Laws 1858, chap. 326 — Evidence.*

Plaintiffs sold flour to H., a fraudulent purchaser, but before any action was taken for the disaffirmance of the sale, the flour was delivered to defendant, as warehouseman. Defendant, before all the flour had been received, issued a receipt, stating that he held the flour for T. & B., and H. transferred the receipt to T. & B., who made advances thereon without notice of H's fraud. In an action by plaintiffs to recover possession of the flour from defendant, *held*, that the receipt was good, and conveyed title to T. and B., so far as it represented the flour actually in store at the time it was issued, but no further. In such an action upon the question whether defendant issued the receipt before all the flour was in store, evidence is inadmissible to show that defendant had, upon another occasion, given a receipt for other flour before it was received at his warehouse.

APPEAL from a judgment entered on a verdict in favor of plaintiffs, and from an order denying a new trial.

*Andrew Boardman*, for appellant.

*A. J. Vanderpool*, for respondents.

DANIELS, J.  This action was brought to recover possession of 264 barrels of flour, sold and delivered by the plaintiffs to Walter S. Hicks on the 8th of May, 1860, and detained from · them by the defendant.  Evidence was given tending to show that the sale was procured by the fraud of the purchaser; but before any action was taken by the plaintiffs for its disaffirmance, the flour was delivered to the defendant, as a warehouseman, who issued a receipt, stating that he had received it in store, and held it for account and risk, and subject to the order of Thomas & Benham.

The flour was delivered to him on the 9th day of May, 1860, and the receipt was issued that day.  During the same day, Hicks transferred the receipt to Thomas & Benham, and received from them, by their check paid that day, an advance of $4 per barrel upon 214 barrels of the flour, and $6 per barrel on the other 50 barrels.

The evidence tended to show that the flour was delivered at the defendant's warehouse before the hour of three o'clock in the afternoon, and that the advance was made upon the receipt by Thomas & Benham sometime before noon; but the defendant testified that he did not give the receipt until the flour was received.  If he was right in that statement, then the transaction, so far as himself and the persons making the advance upon the receipt were concerned, seems to be legal and regular.  Whether he was or not, under the evidence, was a question of fact for the jury to decide.  Upon this subject the plaintiffs were allowed to show, by one of the witnesses, that the defendant, upon another occasion, had given a receipt for other flour before it was received at his warehouse.  Before this evidence was given, the defendant objected to its reception, and excepted to the ruling allowing it to be given.  As that transaction had no possible connection with the one in controversy, it could not properly tend to prove the fact that the receipt, on which the advance was made, was issued before the flour was in the warehouse.  And yet it is manifest that the jury would be very likely to use it for that purpose; they would be disposed to infer from it that the defendant was in the habit of carelessly issuing receipts in that manner, and that he, therefore, probably did so in the instance in suit.  This would directly prejudice the defendant in his defense, when really it could not strictly be used for any such purpose.

The evidence was clearly improper, and a general objection was sufficient to present the point based upon the ruling admitting it. *Merritt* v. *Seaman*, 6 N. Y. 168.  And, as the evidence had some

bearing upon one of the points in issue, the ruling admitting it cannot be disregarded. *Worrall* v. *Parmelee*, 1 N. Y. 519, 521.

In any view taken of the evidence, some of the flour must have been received at the defendant's warehouse at the time when the money was advanced to Hicks, upon the transfer by him of the receipt to Thomas & Benham. If the defendant's evidence was true it was all there ; and yet the court held that, if the receipt was issued by the defendant before all the flour was received at his warehouse, the defendant could not hold it for the persons making the advance upon it, even if they made it upon the credit of the receipt, without notice of the purchaser's fraud, or notice or knowledge of any fact or circumstances which ought to have put them on their guard as men of ordinary prudence. Under this ruling, even if every barrel of the flour was in the warehouse before the advance was made upon the receipt, and the person making it acted in the most perfect good faith, they could not hold the flour as security for the advance.

The court also held that the receipt was void, if issued prior to the whole of the flour being actually received in store or on the defendant's premises, and that he could not justify the detention of the property under it, even though Thomas & Benham made an advance on its security. If the receipt was issued as this proposition contemplated it might have been, there can be no doubt but that the defendant was guilty of a crime in issuing it under the statute forbidding that to be done, where the property mentioned in it shall not be at the time in store. Laws 1858, ch. 326 ; 3 N. Y. Stat. at Large, 667.

The object of this statute was to prevent the issuing of such instruments before the property was received, in order to protect persons dealing with them in good faith, and confiding in the truth of their statement, from loss; and it should be so applied as to correct that abuse, as far as that can practically be done. It was no part of its purpose to increase the jeopardy of innocent dealers in personal property. And that would very clearly be done by holding the receipt ineffectual because the property was not all in store at the time when it was issued.

Receipts of this description are treated in commercial transactions as the representatives of the property mentioned in them, and are dealth with, under the sanction of the law, as muniments of title. They are substitutes for the property, affording important

facilities for its transfer, either absolutely or by way of security. And the statute was enacted for the purpose of increasing, instead of diminishing the security of persons dealing in property by means of them. It should be so construed as to promote that end. But that would not be done by holding them void because the property was not all received when they were issued.

As between the maker and the person receiving such a receipt, knowing its unlawful character, it would undoubtedly be entirely inoperative as long as that state of things continued. But to extend that consequence so far as to defeat the rights of an innocent purchaser, after the property wholly or partially had been put in store under it, would be characterized by a degree of harshness which the statute has nowhere required to be applied.

A person who, in good faith, became the purchaser of such a receipt, either absolutely or by way of security for a valuable consideration advanced upon the faith of it, was always protected before the enactment of the statute, when it truly represented the property mentioned in it, against a claim of title like that relied upon by the present plaintiffs.

That protection resulted from the fact that the property was actually, at the time of the transfer, in store, as the receipts stated it to be. *Wilkes* v. *Ferris*, 5 Johns. 335; *Gibson* v. *Stevens*, 8 How. (U. S.) 384, 399; 3 R. S. (5th ed.) 76, § 3; *Cartwright* v. *Wilmerding*, 24 N. Y. 521; *City Bank* v. *Rome, etc., R. R. Co.*, 44 id. 136. And it reasonably resulted from the circumstances that, by the storage of the property and the receipt issued for it, the person having title to the latter could, by means of it, dispose of the former precisely the same as if the property itself were manually passed over to the person buying or making advances upon it. The ability was thereby secured of selling or hypothecating the property simply by transferring the receipt. And all that was required for that purpose was that the person proposing to dispose of the receipt had, at the time, the property in store according to its terms, with the legal authority to transfer the title to it.

It was simply a substituted mode of selling property which the vendor had the right to dispose of. And the power to do it existed, if the property was in store, with the right to transfer the title at the time of the sale; under those circumstances the seller could dispose of it either by delivering the property over under the terms of his sale or by constructively doing it by transferring the receipt.

In either case it would be the fact that he had the property in store at the time he proposed to dispose of it, that would enable him to render the sale complete either by delivery in fact or by a transfer of the receipt as representing it. And that would be exactly the same whether it was issued before the property was all in store or afterward, provided that affected by the sale was there at the time of making it. No reason existed requiring any change in this mode of selling property when the statute was passed, and it contains nothing appearing to have been intended to produce any change in it.

The object which the legislature seems to have designed to accomplish, by its enactment, was to render it more certain than it previously had been, that the receipt should represent the property offered for sale, or by way of security for advances, at the time when the party proposed to make such a disposition of it. And no good reason appears for making any distinction in this respect between transactions occurring before and since the statute. The receipt still continues in the same manner to represent the property, if the party has it in store when he proposes to dispose of it, and the effect of the transfer of it is the same as a constructive delivery of such property as may at the time be represented by it. And the appearances inducing the confidence of the party proposing to act upon it, and the reasons requiring him to be protected, are in no sense changed by any thing which the statute contains.

At the time when the advances were made to Hicks upon this receipt, it not only professed to represent property in store, but to a certain extent, at least, that representation was true, for some of the flour was then at the defendant's warehouse; and so far, but no farther than that, it entitled the persons to protection who made the advances, provided they did so without notice of any fact calculated to awaken suspicion of the existence of the plaintiffs' rights.

A fraudulent purchaser of another's property may transfer a good title to it to a *bona fide* purchaser, for value, where the purchase is made before the seller has taken any step to disaffirm the sale on account of the fraud. And the sale may be rendered as effectual by properly passing to the purchaser the legal evidence of title and possession, as by actually handing over the articles themselves which may be the subject of it.

This principle includes all transactions affecting the title to per-

sonal property, whether it be absolutely transferred or only by way of security for advances made upon it. The effect is the same, whether the transfer is completed by passing the articles sold from hand to hand, or by a delivery of the document representing it, which the law has sanctioned as constructively doing the same thing. Either, in a case like the present one, is sufficient to bring the transaction within the salutary rule so frequently repeated and applied, that where a loss must be sustained by one of two innocent persons on account of the fraud or misconduct of another, it must be borne by the one who supplied him with the means and ability of producing it. *Crocker* v. *Crocker*, 31 N. Y. 507; *Rawles* v. *Deshler*, 3 Keyes, 572.

The judgment and order denying the motion for a new trial should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and LAWRENCE, J., concurred.

*Judgment reversed and new trial ordered.*