HERMAN A. ARMOUR et al., Appellants, *v.* THE MICHIGAN CENTRAL RAILROAD COMPANY, Respondent.

Defendant's agent, having authority to issue bills of lading, upon delivery to him by M. of a forged warehouse receipt, issued to M. two bills of lading, each stating the receipt of a quantity of lard consigned to plaintiffs at New York, and to be transported and delivered to them. Said agent was informed by M., at the time of the delivery of the bills of lading, that he intended to use them at bank. M. drew sight drafts on plaintiffs, to which he attached the bills of lading; these were delivered to a bank and were forwarded to New York, and the drafts were paid by plaintiffs, on presentation, upon the faith and credit of the bills of lading. In an action upon the bills of lading, *held* (EARL, C., dissenting), that defendant was bound by the acts of its agent, the same being within the apparent scope of his authority, and was estopped from denying the receipt of the lard, and that plaintiffs were entitled to recover.

*Grant* v. *Norway* (10 C. B., 665) disapproved and distinguished.

Defendant seized a quantity of lard in the possession of the warehouseman, in whose name the forged receipt purported to have been issued, and shipped it to New York. Upon its arrival it was replevied by parties claiming title; plaintiffs were notified of the replevin suit and called upon to defend. This they did not do, and the claimants obtained judgment. *Held*, that the judgment was no bar to this action, and in no way affected plaintiffs' rights.

*Armour et al.* v. *Michigan Central Railroad Company* (3 J. & S., 563) reversed.

(Argued October 2, 1874; decided January term, 1875.)

APPEAL from a judgment of the General Term of the Superior Court of the city of New York affirming a judgment in favor of defendant, entered upon the report of a referee. (Reported below, 3 J. & S., 563.)

* 59 N. Y., 336.

This action was brought upon two bills of lading issued by defendant.

The referee found the following facts, in substance : That, on the 7th day of October, 1867, one D. D. Michaels produced and delivered to the defendant's agent, in the city of Chicago, a paper purporting to be a receipt, signed by I. T. Sunderlin, dated the second of the previous July, for 200 tierces prime lard, his brand and manufacture, in store for account and risk of said Michaels, to be held subject to return of said receipt properly indorsed, and payment of storage, usual rate, loss and damage by fire or leakage at owner's risk, marked M. That Michaels delivered to the defendant's agent his order on Sunderlin for 100 tierces of lard, and thereupon the defendant, by its agent, executed and delivered to Michaels a bill of lading, or carrier's receipt, acknowledging the receipt from him of 100 tierces of lard consigned to the plaintiffs, at New York, and to be there delivered to them. The defendant, at the request of Michaels, afterwards, and on the 12th of October, 1867, on the faith and credit of what purported to be Sunderlin's warehouse receipt, having in the meantime, at the request of Michaels, omitted to call on Sunderlin for the 100 tierces, executed and delivered to Michaels another bill of lading, acknowledging the receipt from him of the other 100 tierces of lard, like the previous 100 tierces consigned and to be transported to the plaintiffs, at New York. That the defendant, at the time when these bills of lading were issued, was informed by Michaels that he intended using the same at bank the same day. That Michaels, on the seventh of October, made his draft upon the plaintiffs for $3,600, to which he attached the defendant's bill of lading of that day, and on the twelfth he made another draft upon the plaintiffs for the further sum of $3,600, to which he attached the bill of lading of the latter date, each of which drafts were made payable to the order of and was delivered to the Manufacturers' National Bank of Chicago, by whom they were, with the bills attached, transmitted to New York, and there caused to be presented to the plain-

tiffs for payment; and that the plaintiffs, on the faith and credit of the respective bills of lading, paid the first draft on the 10th or 11th of October, 1867, and the second, on the fifteenth or sixteenth of the same month. It was soon after, and prior to the twenty-third of the same October, discovered that the receipt purporting to have been signed by Sunderlin for the 200 tierces of lard was a forgery committed by Michaels, and that he had not the property referred to therein in the hands of Sunderlin; of this the defendant had no prior knowledge or information, but, acting in the belief of the genuineness of the receipt, and that a certain 197 tierces of lard in Sunderlin's possession, as warehouseman, branded I. T. Sunderlin, was the property intended to be covered by the receipt, caused them to be seized and placed in its possession, and transported to New York, where they arrived prior to the thirtieth of the same month. On that day, the plaintiffs presented to the defendant's agent in that city the two bills of lading, and requested the delivery to them of the 200 tierces of lard therein mentioned, with which request he refused to comply; and thereupon, on that day, the plaintiffs commenced this action. On the first day of November following, Walbridge, Watkins & Co., having the right of property and possession of the 197 tierces of lard, brought an action of replevin therefor, in the Supreme Court of this State, against the Hudson River Railroad Company, in whose possession the lard then was, and thereby obtained the possession thereof, of which the plaintiffs were notified by the defendant, with a request to appear and defend, and a consent to substitute, instead of its attorney, any attorney they might name. They did not appear in the action, and, by the judgment therein, it was adjudged that the plaintiffs therein had the right to recover the 197 tierces of lard.

As a conclusion of law from these facts, the referee found that by the bills of lading, or carrier's receipts, and the delivery of them to the plaintiffs attached to Michaels' drafts upon them, and the payment by them of those drafts, they acquired all the rights of Michaels; and it being shown that the goods

received by the defendant for transportation under its contracts were 197 tierces of lard, to which Walbridge, Watkins & Co. had paramount title, and right of possession, the defendant was legally excused for the non-delivery of the 197 tierces; and that for the value of the remaining three tierces, the plaintiffs were entitled to recover, and ordered judgment against the defendant for $142.30, the balance thereof.

Judgment was entered in accordance with those conclusions. Further facts appear in the opinion.

*Samuel Hand* for the appellants. Defendant having acknowledged the receipt of the lard, marked as stated in the bills of lading, and contracted to deliver it to plaintiffs, who, on the faith of this acknowledgment and agreement, advanced value, is now estopped from denying the truth of the admission. (*Ellis* v. *Willard*, 5 Seld., 529; 2 Redf. on Railways, 141; Ang. on Car., § 231; *Dickerson* v. *Seeley*, 12 Barb., 99, 534; *Blossom* v. *Champion*, 37 id., 554; *Bume* v. *Weeks*, 7 Bosw., 372; *Holbrook* v. *Vose*, 6 id., 110; *Meyers* v. *Peck*, 28 N. Y., 590; *Brown* v. *Bowen*, 30 id., 519; *Plumb* v. *Catt. Ins. Co.*, 18 id., 292; *Bank* v. *Hazard*, 30 id., 226.) The replevin proceedings were no excuse for a failure to deliver. (*Edwards* v. *W. L. Tr. Co.*, 104 Mass., 179; *Barnard* v. *Kobbe*, 54 N. Y., 516; *Blivin* v. *H. R. R. R. Co.*, 36 id., 407; *Cook* v. *Holt*, 48 id., 275; *Harmony* v. *Bingham*, 2 Kern., 99; *Beebe* v. *Johnson*, 19 Wend., 500; *Williams* v. *Vanderbilt*, 28 N. Y., 217; *Baker* v. *Johnson*, 42 id., 126.) Plaintiffs are to be regarded as presumptive owners of the goods and assignees of the contract to deliver in the bill of lading and are entitled to sue thereon. (*Dows* v. *Greene*, 12 Barb., 310; *Cayuga Bank* v. *Daniels*, 47 N. Y., 631; *Sweet* v. *Barney*, 23 id., 337; *Krulder* v. *Ellison*, 47 id., 36; *Fitzhugh* v. *Winan*, 5 Seld., 562; *Price* v. *Powell*, 3 Comst., 322; *Everett* v. *Salters*, 15 Wend., 474.) This action may be properly regarded as an action on the contract to deliver. (*Lamb* v. *C. and A. R. R. Co.*, 2 Daly, 454.) If the action was regarded as upon an implied assumpsit of the carrier to deliver within a reason-

able time, the complaint was sufficient.    (*Kent* v. *H. R. R. R. Co.*, 22 Barb., 278; *Hawkins* v. *Hoffman*, 6 Hill, 586; *Bk. of Orange* v. *Brown*, 3 Wend., 158.)

*Benj. K. Phelps* for the respondent.    The right of action for defendant's failure to deliver the lard was in Michaels, and had never vested in the plaintiffs.    (*Blanchard* v. *Paige*, 8 Gray, 281; *Lickbarrow* v. *Mason*, 1 H. & W. Notes [Phil. ed., 1855], 884; *Thompson* v. *Dowling*, 14 M. & W., 403; *Joseph* v. *Knox*, 3 Camp., 320; *Sargent* v. *Morris*, 3 B. & Ald., 277; *Dornett* v. *Beckford*, 5 id., 521; *Moore* v. *Wilson*, 1 T. R., 659; *Byrne* v. *Weeks*, 7 Bosw., 380; *Dows* v. *Green*, 24 N. Y., 638.) Plaintiffs, as assignees for value of the bills of lading, acquired only the title of their assignor in the goods described therein. (8 Gray, 298.)    Without proof of special authority in defendant's agent to execute bills of lading for goods not actually shipped or received for shipment, it is not liable upon a bill of lading executed by its agent without any actual receipt of the goods.    (*Grant* v. *Norway*, 10 C. B., 666; *F. and M. Bk.* v. *B. and D. Bk.*, 16 N. Y., 141, 151; *Sch. Freeman* v. *Buckingham*, 18 How. [U. S.], 182.)    Defendant's failure to deliver to plaintiffs was excused by the taking of the goods from its possession by process of law.    (*Bliven* v. *H. R. R. R. Co.*, 36 N. Y., 403; Story on Bail., §§ 120, 226, 582; *Shelbury* v. *Scotsford*, Yelv., 23; *Edson* v. *Weston*, 7 Cow., 278; *King* v. *Richards*, 6 Whart., 418; *Wilson* v. *Anderton*, 1 B. & Ad., 450; *Whittier* v. *Smith*, 11 Mass., 211; *Van Winkle* v. *U. S. M. S. S. Co.*, 37 Barb., 122; *Bates* v. *Stanton*, 1 Duer, 79; *Stiles* v. *Davis*, 1 Black [U. S.], 101; *Barton* v. *Wilkinson*, 18 Vt., 186; *Swift* v. *Dean*, 11 id., 323; *Turner* v. *Goodrich*, 26 id., 707; *Thorn* v. *Tilbury*, 3 H. & N., 534; *Humphrey* v. *Reed*, 6 Whart., 443.)    There was nothing to estop defendant from availing itself of the defence disclosed by the facts. (*Mech. Bk.* v. *N. Y. and H. R. R. Co.*, 3 Kern., 599; *Sch. Freeman* v. *Buckingham*, 18 How. [U. S.], 192; *Hubbersty* v. *Ward*, 18 Eng. L. and Eq., 551; *Bates* v. *Stanton*, 1 Duer, 79; *Coleman* v. *Riches*, 29 Eng. L. and Eq., 323; *Walter* v.

*Brewer*, 11 Mass., 99; Redf. on Car., 207, 208, 318; *Berkeley* v. *Watling*, 7 Ad. & El., 29; *Bates* v. *Todd*, 1 M. & R., 106; Ang. on Car., §§ 231, 237.) The true owner of the goods had a right to them as against any one, and Michaels' fraud could in no way impair that right. (*Everett* v. *Salters*, 15 Wend., 474; 20 id., 267; *McEntee* v. *N. J. S. Co.*, 45 N. Y., 34; *Barrett* v. *Spofford*, id., 387; *Hentz* v. *Idaho*, U. S. D. Ct., E. D N. Y., July 11, 1871; *Nat. Ex. Bk. of M.* v. *Dows*, U. S. C. Ct., S. Dist. N. Y., June 11, 1872.)

Gray, C. The facts in this case (omitting those only which are immaterial) are, in substance, these: The defendant knowing that it had not received from or on account of Michaels any lard whatever, and with knowledge when the respective bills of lading were issued that Michaels intended to use them at bank, issued and delivered them to him; these bills, when thus issued, were attached by Michaels to his drafts upon the plaintiffs for a sum somewhat exceeding $7,000, which, upon presentation to them, they, upon the faith that the defendant had received and would transport to the places specified in the respective bills the lard therein described to be in its possession, paid the sums specified in the respective drafts at the time and in the order in which they were presented; and thus the question comes up, whether the defendant is not estopped from setting up as a defence to this action that its statements, known by its agent, at the time of making them, to be untrue, were in fact false, and that no lard whatever was received by the company for or on account of Michaels? The true answer to this question is not involved in doubt. The well-recognized principle that a party who, by his admissions, has induced a third party to act in a particular manner is not permitted to deny the truth of his admission, if the consequence would be to work an injury to such third party, applies to and governs this case. (2 Redfield on Law of Railways [4th ed.], 167; *Dickerson* v. *Seeley*, 12 Barb., 99, 102; approved in *Ellis* v. *Willard*, 9 N. Y., 529, 534.)

It is, however, insisted that the defendant, in issuing these

bills of lading, acted in good faith and without any design to commit a fraud upon any one who should make an advance upon the strength of them, and is, therefore, not estopped by the recital contained in them of the receipt of the lard. It cannot, I think, be doubted that the defendant did believe that what purported to be Sunderlin's warehouse receipt was genuine and not a forgery. The difficulty is that the defendant's bill of lading did not recite the receipt by it of Sunderlin's warehouse receipt for the lard, but its own receipt of it, and it may be conceded the defendant really believed the lard would be forthcoming when it should be demanded, and that no injury would result to the plaintiffs. But its false statement that it had received the lard misled them, and hence the defendant must be held to intend what was in fact the legitimate consequences of its own misstatement. And now that it has been the cause of the advances made by the plaintiffs, it is no excuse for not delivering the lard, which it represented to the defendant it had received from Michaels, that it was by the judgment of the Supreme Court of this State prevented from delivering 197 tierces of lard, the property of another, which it never received from Michaels, but seized and would have delivered to the plaintiffs but for the process and subsequent judgment of the court in favor of the rightful owner.

There is some ambiguity produced by a recital in one of the referee's conclusion of law, "that the goods received by the defendant for transportation were 197 tierces of lard," which is solved by the evidence and previous findings of fact, from which it appears that the paper purporting to be Sunderlin's warehouse receipt for 200 tierces of lard was the defendant's only reliance that Michaels had the lard for which the bills of lading were given, and that the receipt purporting to have been given by Sunderlin was a forgery committed by Michaels himself, who had not the property therein referred to; and further on, independent of what is shown as the judgment record in replevin, he found that Walbridge, Watkins & Co., and not Michaels, had not only the right of property

in, but the right of possession of, the 197 tierces of lard which the defendant caused to be seized with intent to carry and deliver the same to the plaintiffs instead of the 200 tierces represented by the forged receipt, and which, by the bill of lading, the defendant falsely represented to be in its possession, and of which it was never either actually or constructively possessed.

The judgment of the General and Special Terms should be reversed and new trial ordered.

DWIGHT, C.   The defendant in this action issued at Chicago to the plaintiffs, on October 7, 1867, a bill of lading of 100 tierces of lard of the brand "I. T. Sunderland, M.," containing 36,150 pounds.   The bill stated that the lard was received from one D. D. Michaels, and was consigned to the plaintiffs, and was to be transported over the defendant's line and delivered to the consignee or owner at New York, the owner or consignee paying freight.   The bill was signed by W. W. Street, agent for the defendants.   On October 12, 1867, a similar bill was issued by the defendant to the same consignees of a like number of tierces marked " S.," also received from Michaels, which were to be also transported over the defendant's line and delivered to the consignee or owner at Ward's inspection yards, New York.   This bill called for 36,150 pounds of lard, and was signed by the same agent.   The freight in each case was not to exceed eighty-five cents per 100 pounds.   The defendant, at the time of issuing these bills, had no lard in its possession or under its control.   It was induced to issue them from the fact that Michaels exhibited to Street a paper purporting to be a warehouse receipt of one I. T. Sunderland, a warehouseman in Chicago, for 200 tierces of lard in favor of Michaels.   This receipt was indorsed over to the defendant and delivered to Street, who, on the faith of it, issued the two bills of lading already described.   The receipt purporting to be signed by Sunderland was a forgery.   The result was, that, though the defendant had issued the bills of lading, it had no lard to represent them, nor a right to any

lard in Sunderland's warehouse owned by Michaels. The latter person had an interest in some tierces of lard there, but on that a firm known as Walbridge, Watkins & Co., had a prior lien and were entitled to the possession. The defendant was informed by Michaels, at the time that the bills of lading were issued, that he intended to use them at bank on the days on which they were respectively dated. No particular inquiry was made as to the genuineness of the warehouse receipt; the defendant's agent, Street, having confidence in Michaels, and having constant transactions with him. At the times above specified, Michaels drew his sight drafts on the plaintiffs, payable to the order of a bank in Chicago in two sums of $3,600 each. The bills of lading accompanied the drafts, which were accepted and paid by the plaintiffs on the faith thereof.

As between the common carrier and the plaintiffs, this was a New York contract. It was to be performed in New York, and the acceptance of the drafts was made here.

After the defendant had discovered the forgery of the warehouse receipt, made over to it by Michaels, on October twenty-third, it commenced a replevin suit against I. T. Sunderland, the warehouseman, and took out of his possession 197 tierces of lard and shipped them to New York. These tierces did not have the same brands as those mentioned in the forged receipts. After the arrival of these tierces in New York, Walbridge, Watkins & Co. replevied them by an action in the Supreme Court, commenced November 1, 1867, against the Hudson River Railroad Company, in whose possession they were. The plaintiffs received formal notice of this second replevin suit on December 10, but took no steps to defend the action. Judgment was subsequently recovered by Walbridge & Watkins against that company, it being adjudged that they had the right to recover the possession of the lard.

The plaintiffs duly demanded the lard of the defendant. Its value in New York, after deducting freight, was $7,935.45.

The simplest way of arriving at the correct result in this case will be to inquire, in the first place, as to what would have been the rights of the plaintiffs in case the defendant had had

the lard in its possession, next to consider the defendant's obligations as having no goods to correspond with the bill of lading, and finally to take into account the effect of the proceedings in replevin.

I. In case the defendant had had in its possession lard to correspond with the bills of lading, the plaintiffs would have had the title to it in trust for Michaels after paying its own lien. It will be observed that the bills ran directly to the plaintiffs. The consignment was made to them. They are not assignees of bills made to Michaels, but the contract to deliver the lard is made by the defendant with them. They were not mere agents of Michaels, but they had an interest to the extent of $7,000 and upward. This fact the defendant knew when the bills were issued, and it could not deny that it contracted to deliver the lard to the plaintiffs in case that it had the property in its possession. The effect of such a bill of lading running to a consignee who has made advances was considered in *The Bank of Rochester* v. *Jones* (4 N. Y., 497, 502; *Haille* v. *Smith* (1 Bos. & Pull., 563); *Allen* v. *Williams* (12 Pick., 297); *First National Bank of Toledo* v. *Shaw* (61 N. Y., 283). It was held in these cases, in substance, that where an owner of goods delivers them to a carrier, who issues a bill of lading to a consignee, who advances money on the faith of the bills, that the latter becomes owner for his own sake to reimburse himself, and after reimbursement, in trust for the former owner. *Haille* v. *Smith* is directly in point. In that case, G. & H. Brown, of Liverpool, wishing to draw upon L. Smith & Co., a banking-house in London, to a large amount, agreed, among other securities to be given, to consign goods to a mercantile house consisting of the same partners as the banking-house. The goods were consigned accordingly to the mercantile house. It was held that the consignment to the mercantile house transferred to it the general property in the goods in trust, and that the banking-house and consignors were both concerned as *cestui que trust*, and that the bill of lading operated as an evidence of the change of property. The principle of this case has been twice approved

in this court (see the cases above cited), and must now be regarded as settled law. As applied to the facts of the present case, it would result that the plaintiffs would have had the legal title to the lard; that the contract for its delivery was made with them, and that in general they would have been able to vindicate their claim to the property by all the remedies incident to ownership and to a contract for transportation of their property.

II. It is now necessary to consider how far the fact that the company had no lard affects this question. This inquiry divides itself into two branches. One concerns the power of Street to bind the company by issuing bills of lading when it has no goods to correspond with the bills. The other is to consider the effect of the bills, assuming that the agent had the requisite authority. The defendant insists that Street could not bind it by issuing fictitious or non-representative bills of lading. It claims that his authority was confined to bills for goods actually within its control. It cites, to this effect, *Grant* v. *Norway* (10 Com. Bench, 665); *Schooner Freeman* v. *Buckingham* (18 How. [U. S.], 182).

*Grant* v. *Norway* has been subject to much and severe criticism, as being adverse to the general view prevailing in the courts of this State, where confidence has been reposed in an agent and an apparent authority conferred upon him, that the principal must suffer from an actual exercise of authority not exceeding the appearance of that which is granted. When one of two innocent persons must suffer in such a case, that person must bear the loss who reposed the confidence. So far as *Grant* v. *Norway* stands in the way of this doctrine, it must be deemed to be overruled. (Remarks of DAVIS, J., in *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 73.) *Grant* v. *Norway*, however, is not precisely parallel with the present case. In that case the bill of lading was issued to a party who knew that the bill of lading was issued by an agent without authority, and was then transferred to a purchaser acting in good faith. It may, accordingly, be said with plausibility that the representation was not made to the assignee,

who simply acquired the title of the fraudulent consignee. It would have resembled the case at bar if the plaintiffs had known of the forgery of Michaels when they took the bills of lading, and had then transferred them to persons paying value and acting in good faith. The case would then have been governed by the rule that an assignee of a thing in action must abide by the case of him of whom he buys. (Remarks of SELDEN, J., in *Griswold* v. *Haven* (25 N. Y., 604–606).

Street, having power to issue bills direct to consignees for goods actually in the possession of the defendant, and the present bills being in no ways distinguishable in form from those which were usually employed, he must be considered as having the necessary authority as to the plaintiffs acting in good faith.

The only remaining point under this branch of the case is, whether the defendant is not estopped by the statements in the bill of lading from denying that it had sufficient lard secured from Michaels to comply with its terms. The defendant's agent was informed by Michaels that the bills were to be used at bank on the same day. They were issued with the expectation that they would be acted upon by bankers or other capitalists. It cannot complain if the bills accomplished the purpose for which they were designed. The representations in the bills were made to any one who, in the course of business, might think fit to make advances on the faith of them. There is thus present every element necessary to constitute a case of estoppel *in pais*, a representation made with the knowledge that it might be acted upon, and subsequent action upon the faith of it to such an extent, that it would injure the plaintiffs if the representation was not made good. It is now well settled that fraud is not necessary to constitute a case of estoppel. Though the defendant was induced by the fraud or mistake of Michaels to issue these bills, that is immaterial. Its liability depends on the fact that, no matter what its inducements may have been, it has made certain representations upon which the plaintiffs have advanced their money in good faith. If the defendant placed undue confi-

dence in Michaels, it is but the familiar case of imposing the burden upon him who unwisely or unguardedly reposed the confidence. (*Brown* v. *Bowen*, 30 N. Y., 519 ; *Manufacturers and Traders' Bank* v. *Hazard*, id., 226 ; *Shapley* v. *Abbott*, 42 id., 443 ; *Rawls* v. *Deshler*, 4 Abb. Ct. App., 12.) The principle governing the present case was announced in the case of *Griswold* v. *Haven* (25 N. Y., 595). It there appeared that the defendants John Wright & Co. issued receipts representing that they had in store, on account of Ford & Son, a quantity of grain. One of the defendants went with one of the firm of Ford & Co. to the plaintiff, and in reply to an inquiry from the plaintiff stated that the grain was in good order and all right. It was held that the plaintiff having made advances on the faith of the statement, the defendants were bound by the act of their agent, and were estopped from denying that they had the grain in store. The difference in facts between this case and the one at bar makes no difference in principle. In the one case the statement was oral, in the other it was written. Both cases have the important and leading element that the agent knew that the statement was to be acted upon.

The fact that a bill of lading is not negotiable, has nothing to do with the question. That point would have been open for discussion if the bills had been issued to Michaels and then assigned to the plaintiffs. As it was, the representations having been made direct to the plaintiffs, their right of action is not derived through Michaels, but rests upon the direct relations between themselves and the defendant. This view is sustained by the case of *Moore* v. *The Metropolitan Nat. Bk.* (55 N. Y., 41). It is there held that a *bona fide* purchaser for value of a non-negotiable chose in action from one upon whom the owner has by assignment conferred the apparent absolute ownership (such purchase being made on the faith of that ownership), obtains a valid title as against the real owner, who is estopped from asserting a title in hostility thereto. This view is also supported by *McNeil* v. *Tenth National Bank* (46 N. Y., 325). The court in the *Metro-*

*politan Bank Case* expressly affirms that a representation in a non-negotiable chose in action is equivalent in all respects, where it is acted upon (in accordance with the usual rules applied in cases of estoppel), to one made in the case of negotiable paper.   As this is the latest utterance of the Court of Appeals, overruling *Bush* v. *Lathrop* (22 N. Y., 535), so far as that case is inconsistent with it, it must be followed in this court.

If these views are correct the plaintiffs in the present case might have brought an action of trover against the defendant for so many tierces of lard as the bill of lading called for. (*Griswold* v. *Haven, supra; Harding* v. *Carter,* Park on Ins., 4; 1 Greenl. on Ev., § 208.)   The same rule is applicable to innocent mistakes which have been acted upon as to fraudulent misrepresentations.   (*Salem Bk.* v. *Gloucester Bk.,* 17 Mass., 1, 27.)

As it must be assumed that the defendants had lard to which the plaintiffs had the title, they could bring any action incident to ownership in case the lard was not delivered. The present action is accordingly well founded.

III. The action of replevin instituted against the Hudson River Railroad Company by Walbridge, Watkins & Co., had no effect upon the plaintiffs' right.   There was no evidence that the lard seized in that action was that which the defendant was bound to deliver.   It did not have the marks described in the bills of lading, nor was it *received by the defendant from Michaels.*   On the other hand, it was obtained by the defendant from the warehouseman acting for the real owners (Walbridge & Co.) by its own wrongful act.   It cannot set up a replevin suit which was caused solely by its unjustifiable intermeddling with the property of another in bar of its duty to deliver lard which it professed to receive from Michaels on behalf of the plaintiffs.

The judgment should be reversed and a new trial ordered.

All concur, except EARL, C., dissenting.

Judgment reversed.