ELIZABETH BICKFORD, RESPONDENT, *v.* HENRI MENIER, GASTON MENIER AND ALBERT MENIER, APPELLANTS.

*Agent — implied power of, to borrow money — when the direction of an agent to a sub-agent is admissible as against the principal.*

This action was brought against the defendants, who resided and carried on business in Paris, to recover money loaned to an agent carrying on business for them in New York. The general agent of the defendant, having charge of their business in the city of London, had appointed one Bickford to locate and build up a distinct and separate business in the city of New York, he being supplied with goods manufactured by the defendants, and being empowered to exhibit and sell them, no specific restrictions being imposed upon him.

*Held,* that the court properly submitted to the jury the question as to whether Bickford did not have an implied power to borrow money, when necessary, to be used in the course of the business.

*Tucker* v. *Woolsey* (64 Barb., 142), distinguished.

Upon the trial a letter written to Bickford from the London agent, in response to one from Bickford, was read in evidence. In it the London agent stated that he did not see any harm in Bickford's borrowing money, and told him to be sure and send him some and keep his payments regularly.

*Held,* that as Bickford was subject to the London agent's direction in the management and conduct of the business, the evidence was admissible.

*White* v. *Miller* (71 N. Y., 118), distinguished.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*S. P. Nash,* for the appellants.

*John P. Pannes,* for the respondent.

DANIELS, J.:

The verdict and judgment were recovered for the equivalent, in dollars, of £1,200 in English currency, loaned by the plaintiff to her brother Edward Bickford, who was at the time engaged in the business of, and acting for, the defendants. Her evidence as well as that given by himself, tended to show that the money had been loaned to be used in the defendant's business, then under the control and management of Bickford, at the city of New York, and his

evidence was that the money had actually been used in that manner. The loans are stated to have been made to the extent of £200, in November, 1878, £200 in March, 1879, and £800 in May of the same year.

Bickford had not been expressly authorized by the defendants themselves to borrow money on their account in the course of this business; and the plaintiff's action for the recovery of the sums averred to have been loaned was resisted, on the ground that he had no authority to make the loans on their account, and that the money in fact had not been loaned by the plaintiff. In ordinary cases it may be assumed, as it was held in *Tucker* v. *Woolsey* (64 Barb., 142), that an agent has no implied authority to borrow money on the responsibility of his principals. But that case materially differed from the one brought before the court by these appeals, in the fact that the agent there was employed to look for orders in the business of the defendants, and no implied authority to borrow money on their account could be inferred from such an employment. In the present case the employment of Bickford as agent of the defendants was much broader and more extended. They resided and carried on their own business in Paris, and he was sent to the city of New York under the authority of their general agent, having charge of their business in the city of London, to locate and build up a distinct and separate business in the city of New York. For this object he was supplied with goods of the defendant's manufacture and empowered, as he did, to open and carry on a store for their exhibition and sale. No specific restrictions were imposed upon him in this employment, but he appears to have been authorized to do whatever might ordinarily be transacted in founding, conducting and managing a business on behalf of his principals, in a country in which neither of them resided. And to do that his agency would be co-extensive with the ordinary exigencies and course of the business itself. Practically, the authority was delegated the same as that of a subordinate proprietor of the business, who, in its ordinary course, could very well borrow money to meet special emergencies arising in its conduct.

For an agent may be deemed to possess all the authority which may be required, or become necessary, to promote or secure the results intended to be attained in the business to be carried on by

him by virtue of his employment. The implied authority of an agent can only be accurately determined, when it may not have been expressly limited, by considering the employment in which he may have been engaged, and that is ordinarily the only means of ascertaining the limits of his authority in this class of cases. In other words, his authority is limited only by the apparent extent or bounds of his agency. (_Armour_ v. _Michigan Southern R. R. Co._, 65 N. Y., 111; _Marsh_ v. _Gilbert_, 2 Hun, 58.)

Upon this subject it has been said that "the nature and extent of the authority of the servant or agent are often wholly deduced from the nature and extent of his usual employment. Hence, it is that the master is bound by the acts of the servant within the scope of the usual business confided to him; for the master is presumed to authorize and approve the known acts that are incident to such an employment," and "that every such authority carries with it, or includes in it, as an incident, all the powers which are necessary or proper, or usual, as means to effectuate the purposes for which it was created. In this respect there is no distinction whether the authority given to an agent is general or special, or whether it is expressed or implied. In each case it embraces the appropriate means to accomplish the desired end." (Story on Agency [4th ed.], §§ 56, 97.)

The defendants had committed to Bickford full control over and management of their business, commenced and continued by him in the city of New York. No other person in their behalf at any time presented himself to interfere with it, and in the course of its management and transaction if it became necessary to borrow money not obtainable out of the business, the power to make such loans would seem to be included within the extent or scope of the employment. For that would authorize whatever might be necessarily appropriate to the management and conduct of the business, and loans of money might very well from time to time become necessary and be required for that purpose.

In the management and conduct of the business, Bickford was subject to the direction of Guenin, the defendant's agent having the charge and management of their business in the city of London. Under this relation Bickford not only had the right to consult him in the business, but was, within its limits, entitled to follow his

suggestions or directions. And in answer to a letter written to him by Bickford, which was not read in the case, neither was it essential that it should be, Guenin, in November, 1874, wrote to Bickford that he did not see any harm in his borrowing money, and to be sure to send him some and keep his payments regularly. This letter was objected to as improper evidence to this extent; and *White v. Miller* (71 N. Y., 118) has been referred to by the counsel as sustaining the objection. But it does not, for the reason that this was not a mere declaration of an agent concerning a transaction which had past, but it was in the nature of an instruction which the agent was entitled to give to Bickford by reason of the general management committed to him over the business in London, and incidentally extended to that carried on by Bickford in the city of New York. And their own evidence that they gave no such authority to the agent in London would not deprive the letter of its effect in this respect, for the direction or suggestion contained in it was within the apparent limits of the general power of superintendence given by the defendants to their London agent.

Under the evidence in the case, it was certainly a proper subject to submit to the jury whether Bickford's employment appeared, by the business he was authorized to carry on, to be of so enlarged a character as to include, in cases of special emergencies, the power to borrow money; and the case was submitted to the jury by the judge presiding at the trial on that view of the evidence.

The further point in dispute was also so far supported by the testimony of Bickford and the plaintiff as to make that a proper subject for the jury to consider and decide, for it was stated by him that this money was required for the purpose of the business, and that it was so used and entered in the books maintained in it. It is true that his evidence was materially contradicted by his accounts and by a letter written by him, but it was still for the jury to determine whether he was entitled to credit or his evidence should be rejected by them as unworthy of belief. The case was not one which could be determined by the court. It depended very much upon probabilities and inferences, and those were required to be disposed of by the jury. In both respects the case was one which could not be withheld from their consideration; and their verdict on this disputed evidence must be accepted as a

legal result, even though a different determination by them might have been regarded as more consistent with the entire weight and effect of the evidence.

The charge of the court was in all respects as favorable to the defendants as it could in any view be expected to be, for their liability was in all instances made specially dependent upon the fact that the jury must be satisfied by the evidence, before they could find for the plaintiff, that the money borrowed was within the general scope of Bickford's authority. And that, under the circumstances, was all that could consistently be required for the impartial submission of the fact of authority in the action to the jury. The exception taken to the letter of February 26, 1880, has not been overlooked, but that letter is regarded as equally within the superintending authority of Guenin as the preceding letter was, which was written in November, 1874. No ground has been found in the examination of the case on which another trial of the action could be legally directed. Neither of the exceptions which were taken can be held to have been well founded, and the evidence upon the disputed points in the case was sufficiently in the plaintiff's favor to require them to be considered and decided by the jury. The judgment and the order should therefore be affirmed.

BRADY, P. J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Judgment and order affirmed.