LILLA L. WHITE, RESPONDENT, v. MILTON S. PRICE, WILLIAM STITT AND ALFRED A. HOWLETT, APPELLANTS, IMPLEADED, ETC.

*Purchase of stock from an executor — chargeable with knowledge of his lack of authority — right to have illegal stock certificates canceled — statute of limitations — when the ten years' statute is applicable to an action to recover dividends wrongfully received.*

The owner of two shares of stock in a salt company bequeathed the same specifically to the plaintiff, to draw the income arising therefrom during her life with power to dispose of them to take effect at her death, the executors being directed to retain the shares during the plaintiff's life and to pay the dividends to her. After the shares had been set apart for the plaintiff's benefit, and in October, 1873, one of the two surviving executors, without the knowledge of his co-executor, assigned them to one Price in payment of an individual debt, a new certificate being issued to Price for the shares which he subsequently pretended to assign to another person. The certificate assigned to Price ran in the name of the testator and was indorsed by the assignor as his executor. The plaintiff did not learn of the sale to Price until August 20, 1878, and began this action to have the transfer set aside and the company compelled to recognize her as the owner of the shares in May, 1883.

*Held*, that the title to the shares was in the plaintiff.

That Price was chargeable with notice of the executors inability to transfer the certificate, and acquired no rights as against the plaintiff's prior title.

That persons purchasing the new certificate from Price. with knowledge that the shares which it purported to represent were owned by the testator at his death and claimed by his estate, acquired no better title than he had.

That the plaintiff had a right to invoke the aid of this court to remove the cloud upon her title to the shares, and to have the illegal evidence of title in others canceled.

That she was entitled to recover the amounts of the dividends received by Price upon the shares, although some of them were paid to him more than six years prior to the commencement of the action.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

James Lynch was the owner of two shares of stock (each of the par value of $1,000) in the Salina Solar Coarse Salt Company, held under certificate No. 64, which he specifically bequeathed to the plaintiff, to draw the income arising therefrom during her life, with power to dispose of the shares to take effect at her death. The will directed the executors to retain the shares during plaintiff's life, and pay the dividends to her. November 13, 1871, the will was admitted to probate and letters were issued to Andrew J. Lynch, John O. S. Lynch and Charles H. Pendergast, who were nominated in the will as executors and trustees. May 11, 1872, Andrew J. Lynch died. September 24, 1872, the surviving executors set apart said shares held under said certificate for the plaintiff's benefit, and for the purpose of carrying into effect the testator's bequest.

October 18, 1873, John O. S. Lynch, without the knowledge of Charles H. Pendergast, co-executor, assigned said shares and delivered said certificate to Milton S. Price in payment of an individual debt, and on the same day a new certificate (No. 71) was issued to Price for said shares. In October, 1873, Price pretended to assign the shares to defendant Stitt, who pretended to receive the assignment, but no consideration was paid, and the shares were never transferred to Stitt on the books of the corporation.

Charles H. Pendergast resigned, and John O. S. Lynch was removed, from his trust under the will, and May 9, 1880, the Trust and Deposit Company of Onondaga was appointed as trustee in their place, and thereafter prosecuted Price and Stitt in trover for the value of the shares, which action the Court of Appeals held could not be maintained (87 N. Y., 542), and October 22, 1883, a final judgment was entered dismissing the complaint, with costs.

December 27, 1881, while said action was pending in the Court of Appeals, Price assigned said shares to Alfred A. Howlett for $2,000, who received a new certificate from the corporation. Price and Howlett each purchased with knowledge of plaintiff's rights. Price received $720 and Howlett $360 in dividends on said stock.

The plaintiff did not learn of the sale to Price until August 20, 1878, and began this action May 8, 1883.

The defendants denied all of the allegations of the complaint, and alleged that the plaintiff had an adequate remedy at law, and that the action was barred by the six and ten years' statutes of limitation.

The trial court held that the shares belonged to plaintiff, and that the transfers to Price and to Howlett should be set aside; that the Salina Solar Coarse Salt Company (who was a defendant, but did not answer) should thereafter recognize the plaintiff as the owner of the shares, and that Price and Howlett should pay over the amount of dividends received, with interest.

A judgment was entered upon the decision, from which the defendants Price, Stitt and Howlett appeal. The case contains all of the evidence.

*Louis Marshall*, for the appellants.

*William G. Tracy*, for the respondent.

FOLLETT, J.:

On this appeal the defendants challenge but three of the findings of fact, the eighth, ninth and thirteenth. The appeal book contains all of the evidence, and the defendants having requested the court to find the converse of the propositions embraced within those findings, those questions of fact are before this court for review. (*Porter* v. *Smith*, 7 Civ. Pro. R., 195.)

The court found that Lynch was insolvent when he assigned the stock certificate to Price, and that Price then knew that the stock was held by the executors of the estate of James Lynch. Lynch swears that when he made the assignment to Price his notes were under protest and that he was insolvent. There is no evidence or circumstance tending to contradict this evidence. The certificate assigned to Price ran to James Lynch, and the assignment indorsed on the certificate was executed by John O. S. Lynch as executor of James Lynch. Lynch swears that he told Price that he had authority to transfer the stock. Price was not sworn, and there is nothing in the case to rebut the presumption arising from these facts.

Purchasers of stock certificates and non-negotiable instruments

are chargeable with constructive notice of their contents and are bound by the legal effect of the contents, whether they examined the instruments or not. (*Shropshire Union R. and C. Co.* v. *The Queen,* L. R., 7 Eng. and Irish App. Cas., 496 ; reversing *Queen* v. *Shropshire U. R. and C. Co.,* Law Rep., 8 Q. B., 420 ; *City Bank* v. *R. W. and O. R. R. Co.,* 44 N. Y., 136 ; *Farmers' and Mechanics' Nat. Bank* v. *Logan,* 74 id., 568 ; *Farmers and Mechanics' Nat. Bank* v. *Atkinson,* Id., 587 ; *Farmers and Mechanics' Nat. Bank* v. *Hazeltine,* 78 id., 104.) The effect of recitals in title papers upon purchasers is too well settled and familiar to require further discussion. It is undisputed that Price took the assignment from Lynch in payment of a personal debt. A person who takes title from an executor in payment of the executor's personal debt is not a purchaser in good faith and acquires no rights over the prior title or equities of other persons. (*Hill* v. *Simpson,* 7 Ves. Jr., 152 ; *Jaudon* v. *Nat. City Bank and others,* 8 Blatch., 430 ; affirmed, *Duncan* v. *Jaudon,* 15 Wall., 165 ; *Field* v. *Schieffelin,* 7 Johns. Ch., 150 ; *Pendleton* v. *Fay,* 2 Paige, 201 ; 2 Wms. on Ex. [6th Am. ed.], 1004 ; 2 Perry on Trusts, § 814.) The eighth finding is supported by the evidence.

The court found that Howlett knew when he took the assignment of Price's stock certificate that the shares which the certificate purported to represent were owned by James Lynch at his death, and also that his representative then claimed the shares. Howlett testified that he understood the stock was claimed to belong to the Lynch estate, and knew that a litigation was pending in respect to it. This evidence is sufficient to support the ninth finding and deprives Howlett of the position of being a purchaser in good faith.

The court found that the plaintiff did not know of Lynch's assignment of the shares until August 20, 1878. She so testified. The defendants insist that the suit prosecuted in her interest together with the fact that she had before seen Pendergast, who was trying to redress the wrong for her, that it was probable that she had been informed of the assignment long prior to August 20, 1878. The evidence shows that the plaintiff is a nun and has spent her life, since the death of the testator, in various religious houses, and from February 14, 1877, to August 20, 1878, was in France.

She had heard of this bequest in her favor, but had not taken sufficient interest in it to collect the dividends. We do not think the inferences which should be drawn from these facts are such as should have led the trial court to disregard the plaintiff's positive evidence, and certainly the inferences which may be drawn from these facts are insufficient to authorize this court to overthrow the finding of the trial court, and the thirteenth finding is sustained.

When this will was before the Court of Appeals (*Onondaga Trust and Deposit Co.* v. *Price*, 87 N. Y., 547) it was there held that the title to the shares was in the plaintiff. This being so, under the facts found, Price acquired no title under Lynch's assignment and Howlitt none under Price's assignment. The corporation had recognized Price and Howlitt as the owners of the shares under their several certificates and paid them the dividends, and the assignments and formal transfers upon the books of the corporation were clouds upon the plaintiff's title which, if she neglected to remove, would in time deprive her of all claim against the corporation under the rules applicable to laches and acquiescence. The plaintiff has the right to invoke this court to remove those clouds or, in other words, to cancel those illegal evidences of title in others. (*The N. Y. and N. H. R. R. Co.* v. *Schuyler*, 17 N. Y., 592; S. C., 34 id., 30.) This cause of action did not arise out of a contract between the plaintiff and any defendant, but out of a fraud which was undiscovered until August 20, 1878, and this action was brought within six years from that date. December 31, 1846, an action to set aside these transfers was cognizable by the Court of Chancery, and the statute is not a bar to an action to compel the cancellation of the transfers and the corporation to recognize the plaintiff as the owner of the shares. All of the dividends paid to Howlett were received since February 1, 1882, and the statute, under any conceivable construction, is not a bar in his favor. But $240 (the first four dividends) were received by Price more than six years prior to the commencement of the action; but as to these dividends the statute is not a bar. (*Carr* v. *Thompson*, 87 N. Y., 160.) The case of *Burt* v. *Myers* (37 Hun, 277) has been cited. The cause of action in that case was not an equitable one, it accrued under the old Code, the action commenced May 29, 1877, before that part of

the Code of Procedure relating to the limitation of actions took effect, and was governed by the provisions of the old Code. (Code Civil Pro., § 414.)

The judgment should be affirmed, with costs.

HARDIN, P. J., and CHURCHILL, J., concurred.

Judgment affirmed, with costs.